BRUCE MacGIBBON & another *vs.* BOARD OF APPEALS OF
DUXBURY.

Plymouth. December 5, 1969. — January 29, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & QUIRICO, JJ.

*Zoning*, Special permit, Wetlands. *Seashore.*

Discussion of special permits under zoning ordinances and by-laws.
[637–639]

An interpretation of a zoning by-law of a seashore town forbidding "obstruction of streams or tidal rivers and . . . excavation or filling of any marsh, wetland or bog . . . without proper authorization by a special permit issued by" the town's zoning board of appeals, that the provision for a special permit did not apply to "marshland on . . . [the town's] waterfront, but rather . . . [to] some isolated small bog or wetland far from the coastal area," was erroneous; the provision for a special permit applied to substantial areas of coastal wetlands. [639–640]

The preservation of privately owned coastal wetlands in a town in their natural state for the enjoyment and benefit of the public by preventing the owner from using them for any practical purpose would not be within the scope and limits of any power or authority delegated to the town under the zoning enabling act, G. L. c. 40A, so that such preservation by the town's zoning board of appeals by means of refusing all special permits for changes or improvements in the wetlands would be legally untenable. [640–641]

BILL IN EQUITY filed in the Superior Court on August 29, 1966.

The suit was heard by *Lurie*, J.

The case was submitted on briefs.

*Bruce MacGibbon* of St. Thomas, Virgin Islands, pro se.

*Robert J. Geogan*, Town Counsel, for the defendant.

QUIRICO, J.   This is a bill in equity under G. L. c. 40A, § 21, appealing from a decision of the board of appeals (board) of the town of Duxbury (town) denying the plaintiffs a special permit to excavate and fill a portion of their shoreland.  The plaintiffs own approximately seven acres of land, some parts of which are under water once or twice a month.  On September 27, 1962, they applied to the board

for a special permit "to fill and/or excavate any and all portions" of their land. After hearing, the application was denied on November 9, 1962. They appealed to the Superior Court which entered a decree that the decision of the board did not exceed its authority and that no modification of the decision was necessary. They appealed to this court. On June 25, 1964, we reversed the decree and ordered that a new decree be entered "(a) annulling the decision of the board; and (b) directing the board to hold such further proceedings as may be necessary consistent with . . . [the] opinion." *MacGibbon* v. *Board of Appeals of Duxbury*, 347 Mass. 690, 692. Pursuant thereto the board held a new hearing on July 25, 1966. The plaintiffs then limited their application to four separate areas of 10,000 square feet each, instead of the total seven acres of their land. The board again denied the application on August 9, 1966; and the plaintiffs again appealed to the Superior Court. The case is now before us on the plaintiffs' appeal from the final decree entered by the Superior Court on June 27, 1968, that the board's second decision did not exceed its authority and that no modification of the decision was necessary.

On March 12, 1960, the town amended its zoning by-law by adding thereto the following provision: ". . . [The by-law] is also for the purpose of protecting and preserving from despoliation the natural features and resources of the town, such as salt marshes, wetlands, brooks and ponds. No obstruction of streams or tidal rivers and no excavation or filling of any marsh, wetland or bog shall be done without proper authorization by a special permit issued by the Board of Appeals."

General Laws c. 40A (The Zoning Enabling Act) was inserted by St. 1954, c. 368, § 2, replacing G. L. c. 40, §§ 25 through 30B, inclusive. It authorizes cities and towns to regulate the use of land and the size, location and use of buildings by zoning ordinances or by-laws, and it also states and limits the purposes and reasons for which such ordinances or by-laws may be adopted. *Lexington* v. *Bean*, 272 Mass. 547, 554. *Leahy* v. *Inspector of Bldgs. of New Bedford*,

308 Mass. 128, 131–132. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 593–594. *122 Main St. Corp.* v. *Brockton,* 323 Mass. 646, 648–649. *Cross* v. *Planning Bd. of Chelmsford,* 345 Mass. 618, 620–621. *Enos* v. *Brockton,* 354 Mass. 278, 280. The second sentence of the March 12, 1960, amendment to the town zoning by-law as quoted above is expressly authorized by the following provision of § 2 of the Zoning Enabling Act: "A zoning ordinance or by-law may provide that lands deemed subject to seasonal or periodic flooding shall not be used for residence or other purposes in such a manner as to endanger the health or safety of the occupants thereof." Section 4 of the Zoning Enabling Act expressly permits zoning ordinances or by-laws to provide for exceptions thereto; and it also expressly permits the delegation of authority to the board of appeals to issue special permits for such exceptions.[1]

The use of special permits as a means of controlling and accomplishing the purposes of zoning ordinances and by-laws has become a common practice, and it has met with judicial approval. *Lambert* v. *Board of Appeals of Lowell,* 295 Mass. 224, 227. *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 280–281. *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649, 652. *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433, 435. *Raimondo* v. *Board of Appeals of Bedford,* 331 Mass. 228, 230. See *Butler* v. *East Bridgewater,* 330 Mass. 33, and cases cited at pages 37–38.

The delegation of authority to the board of appeals to act on applications for special permits for exceptions to the zoning by-law cannot leave the decision subject to the

---

[1] Section 4 provides that "A zoning ordinance or by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such ordinance or by-law. Such exceptions shall be in harmony with the general purpose and intent of the ordinance or by-law and may be subject to general or specific rules therein contained. The board of appeals established under section fourteen of such city or town . . . may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an exception . . . ."

"untrammeled discretion" or "unbridled fiat" of the board. *Building Commr. of Medford,* v. *C. & H. Co.* 319 Mass. 273, 281. *Commonwealth* v. *Protami,* 354 Mass. 210, 211. The Zoning Enabling Act and the by-law together must provide adequate standards for the guidance of the board in deciding whether to grant or to withhold special permits for the excavation or filling of wetlands. The standards need not be of such a detailed nature that they eliminate entirely the element of discretion from the board's decision. It would be difficult, if not impossible, to forsee and specify, by ordinance or by-law, every circumstance or combination of circumstances under which special permits should be granted or withheld. "The degree of certainty with which standards for the exercise of discretion are set up must necessarily depend on the subject matter and the circumstances." *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, 118. The standards governing the board in this case are those contained in § 4 of the Zoning Enabling Act and in the following provision of § 8 (d) of the town's zoning by-law: "[t]he Board of Appeals may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the by-law in harmony with their general purpose and intent, and in accordance with the specified rules contained in this by-law." The manifest objects and purposes of the enabling act and the by-law furnish a large measure of guidance for the board. The by-law confers a measure of discretionary power to the board, but it does not confer unrestrained power to grant or withhold special permits by the arbitrary exercise of that discretion. We do not think that greater particularity is required. The standards for the guidance of the board are adequate. *Sellors* v. *Concord,* 329 Mass. 259, 263. *Butler* v. *East Bridgewater,* 330 Mass. 33, 37.

Neither the Zoning Enabling Act nor the town zoning by-law gives the plaintiffs an absolute right to the special permit which they seek. The board is not compelled to grant the permit. It has discretionary power in acting thereon. The board must act fairly and reasonably on the

evidence presented to it, keeping in mind the objects and purposes of the enabling act and the by-law. The decision of the board cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary. *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277, and cases cited. Applying this test to the decision of the board and the decree of the Superior Court, we decide that they cannot stand. We discuss the several reasons for this conclusion in some detail in the hope that it may help to bring this now prolonged proceeding to a conclusion.

1. In reversing the previous denial of the special permit to excavate and fill the plaintiffs' land, we said in part that "[t]he board's action must be responsive to the plaintiffs' petition and its decision must contain 'definite statement of rational causes and motives, founded upon adequate findings.' . . . [B]efore we can pass on the validity of the board's action, the facts relevant to the denial of the plaintiffs' petition *to excavate and fill* must be stated." *MacGibbon* v. *Board of Appeals of Duxbury*, 347 Mass. 690, 692. Notwithstanding that language, the board's decision of August 9, 1966, contained no additional or different findings relevant to the proposed excavating and filling of the plaintiffs' land; and there are no such findings in the trial judge's "Findings of Fact, Rulings of Law and Order," dated December 22, 1966. The purpose for which we recommitted the case to the board has not been accomplished. The case must go back to the board again for compliance with our directive.

2. The board committed error in its interpretation of the by-law. The by-law provides in part that "[n]o obstruction of streams or tidal rivers and no excavation or filling of any marsh, wetland or bog shall be done without proper authorization by a special permit issued by the Board of Appeals." In its decision of August 9, 1966, the board said that "the escape clause 'without proper authorization by a special permit issued by the Board of Appeals' was not . . . intended to be used on marshland on our waterfront, but

rather for some isolated small bog or wetland far from the coastal area." As thus interpreted by the board, the by-law prohibits the obstruction of streams and tidal rivers, and the excavation or filling of any marsh, wetlands, or bog, but it authorizes special permits for excavation or filling only as to "some isolated small bog or wetland far from the coastal area." There is no basis for such an interpretation. The by-law does not limit special permits to "some isolated small bog or wetland", nor does it limit them to locations "far from the coastal area." The board's authority to issue special permits for excavation and filling applies to the same kinds and locations of land as does the by-law's prohibition against the obstruction, excavation and filling. The plaintiffs' land is not excluded from the by-law provision for special permits for excavation and filling because it is large, not small, or because it is coastal or shore property rather than inland property, or because it is not "some isolated small bog or wetland."

3. By the amendment of its zoning by-law on March 12, 1960, the town decided, as a matter of policy, that the board could grant special permits to excavate or fill certain coastal or inland wetlands. By its decision of August 9, 1966, the board indicates an intent to nullify the town's policy, at least as to coastal wetlands.[2] It appears that the board, acting under the guise of zoning, intends to grant no special permits for any physical changes or improvements on any coastal wetlands in the town, and thereby to protect and preserve them in their natural state. The preservation of privately owned land in its natural, unspoiled state for the enjoyment and benefit of the public by preventing the owner from using it for any practical purpose is not within the scope and limits of any power or authority delegated to

---

[2] This is apparent from the following language of the decision: "To grant such a permit along our waterfront, even for as small a part as one-seventh of a property, could well set a precedent that would be very difficult to control and could in time spoil our entire waterfront. . . . Duxbury took these steps [to prevent the reduction or destruction of its wetlands] in 1960 — let us not throw away this protection by granting a variance that might and could spread along our total coastal area." The words "these steps in 1960" appear to refer to the town's amendment of its zoning by-law on March 12, 1960.

municipalities under the Zoning Enabling Act. *Aronson* v. *Sharon*, 346 Mass. 598, 603–604. If such preservation of wetlands was the board's sole objective, it was a legally untenable ground for its decision.

4. The plaintiffs contend that the board's administration of the zoning by-law on the basis of its stated policy of granting no special permits to excavate or fill coastal wetlands amounts to a taking of their property or rights therein, without compensation in violation of the Fourteenth Amendment to the Constitution of the United States, and of the Constitution of the Commonwealth, the Declaration of Rights, art. 10. This involves the question whether the power to regulate under the zoning by-law is exercised in such a manner and to such an extent that it deprives the plaintiffs' land of all practical value to them or to anyone acquiring it, leaving them only with the burden of paying taxes on it. *Jenckes* v. *Building Commr. of Brookline*, 341 Mass. 162, 165. *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, 415–416. *Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222, 232. Since the case is to be remanded to the board for further action, we need not now decide whether the plaintiffs are the "uncompensated victim[s] of a taking invalid without compensation." *Commissioner of Natural Resources* v. *S. Volpe & Co. Inc.* 349 Mass. 104, 111. That decision may depend in part on the board's further action on the plaintiffs' application for the special permit.

If the town intends and desires to preserve its remaining undeveloped coastal or inland wetlands in their natural, unspoiled condition for the enjoyment and benefit of the public, there are ways by which it may lawfully accomplish the purpose. It may acquire the wetlands, or easements therein, by gift, by purchase, or by takings by eminent domain under G. L. c. 79 or c. 80A, for any one or several authorized public purposes.[3]

---

[3] The following are some of the alternatives available to the town: (a) the acquisition of land for a public park under G. L. c. 45, § 3, or for a public playground under G. L. c. 45, § 14, or for a public domain under G. L. c. 45, § 19; (b) the establishment of a "conservation commission" under G. L. c. 40, § 8C, and the commission's acquisition of land or interests therein for any of

For the several reasons stated, the decision of the board must be set aside. It follows that there was error in the final decree of the Superior Court upholding the decision. The final decree is reversed. A new decree is to be entered (a) annulling the decision of the board as in excess of its authority; and (b) directing the board to hold such further proceedings as may be necessary on the plaintiffs' application, and to reconsider the application in the light of this opinion.

*So ordered.*

the purposes authorized by said § 8C or by G. L. c. 132A, §§ 2B, 2D and 11; (c) the acquisition of "conservation restrictions" or similar interests in land as defined and otherwise provided for in G. L. c. 184, §§ 31–33, inclusive (inserted by St. 1969, c. 666, § 5); (d) the filing of a petition with the county commissioners under G. L. c. 45, §§ 23A–23C, inclusive, "to establish, lay out and maintain, on behalf of the county, a shore reservation bordering on tidewater in such town"; and (e) proceedings under G. L. c. 130, §§ 27A and 105, for the protection of coastal wetlands, or under G. L. c. 131 (inserted by St. 1967, c. 802, § 1), §§ 40 and 40A, for the protection of inland wetlands.