S. VOLPE & CO., INC. *vs.* BOARD OF APPEALS OF WAREHAM.

Plymouth.    June 10, 1975. — June 14, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Zoning,* Special permit; Wetlands; Board of appeals: decision.    *Words,* "Injurious."

In an appeal under G. L. c. 40A, § 21, from a decision of a town's board of appeals denying an application for a special permit, if it appears that any reason on which the board can fairly be said to have relied has a basis in the trial judge's findings and is within the standards of the zoning by-law and The Zoning Enabling Act, the board's action must be sustained regardless of other reasons which the board may have advanced. [359-360]

In an appeal from a decision of a town's board of appeals denying the plaintiff's application for a special permit to build a golf course in a residential zone, where it appeared that the denial was based on the fact that such a use would require the filling of marshland which would be "injurious" under the by-law, the denial of the permit was not arbitrary even though the injury to the ecology arising from the filling of the marsh would be no more severe if done to construct a golf course than if done for certain permitted uses. [360-362]

BILL IN EQUITY filed in the Superior Court on November 29, 1972.

The case was heard by *Mason, J.*

*Steven J. Comen* for the plaintiff.

*Joseph R. Grassia* for the defendant.

GOODMAN, J.    On August 24, 1972, the plaintiff filed a petition with the board of appeals of Wareham (board) for a special permit (characterized in the petition form as a "Permit for a specific use which is subject to Board of Appeals approval") to "allow [the plaintiff's land] . . . to be used as a . . . Golf Course, including but not limited" to various uses characterized in the petition as "accessory uses."[1]

---

[1] The plaintiff's president testified that the golf course would initially be opened to the public and operated for profit, but that when its resi-

The plaintiff proposes to build a golf course on a tract of land which comprises a substantial portion of a salt water marsh known as Broad Marsh. The tract lies in two zoning districts designated in the Wareham zoning by-law as Residential District A and Residential District C-2. The uses permitted as of right in both districts, besides uses for residential purposes, include a use for "any ... nonprofit recreational purpose." In both districts the zoning by-law provides that a special permit (G. L. c. 40A, § 4[2]) is required if land is to be used as a "golf course." The by-law permits such use "provided that it is not injurious, noxious or offensive and only if authorized by the Board of Appeals subject to appropriate conditions where such are deemed necessary to protect the neighborhood and the town."

The board denied the permit, giving four reasons; the plaintiff appealed to the Superior Court. G. L. c. 40A, § 21. The Superior Court, after hearing, dismissed the complaint. It made findings, rulings, and an order for judgment, including findings paralleling the reasons given by the board; the evidence is reported. The plaintiff appeals from the judgment of the Superior Court.

The plaintiff first attacks as without any basis in the evidence, and therefore clearly erroneous, the trial judge's findings in support of two of the reasons given by the board for its action. However, we need not consider the validity of those findings in view of other findings by the trial judge concerning one of the reasons also given by the

dential development was completed it might become private or semi-private, primarily to serve that development.

In 1963, the plaintiff had received tentative approval of a subdivision plan for a residential development in the Broad Marsh area subject to compliance with provisions of the State sanitary code for installation of appropriate sewage facilities. Thereupon the plaintiff began filling the area to prepare the site, and the Commissioner of Natural Resources brought an action to prohibit the filling. See *Commissioner of Natural Resources* v. *S. Volpe & Co. Inc.* 349 Mass. 104 (1965). That case, after remand to the Superior Court by the Supreme Judicial Court, culminated in a decree invalidating the prohibition.

[2] All references are to The Zoning Enabling Act unaffected by St. 1975, c. 808.

board (the factual basis of which the plaintiff does not challenge and, indeed, virtually concedes): — that "[s]alt marshes provide food for small fish and shellfish, and are feeding grounds for water fowl. They absorb nutrients from coastal waters, and are generally beneficial in the preservation of fish, shellfish and wildlife. . . . Construction of the golf course would destroy the shellfish, fish feeding areas, and wildlife, and would have an injurious effect on local fishing. Disturbing the marsh would affect the community in the sense that the ecology of the entire region would be adversely affected."[3]

If those findings present a valid basis for the board's denial of the permit, its other reasons for the action become immaterial. The task of the Superior Court was to determine whether this applicant for a special permit was able to demonstrate at a de novo hearing (*Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 [1972]) that "the board has based its decision on a 'legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' " *Humble Oil & Refining Co.* v. *Board of Appeals of Amherst*, 360 Mass. 604, 605 (1971), quoting from *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970), and citing *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969). The point of departure is the board's decision and the reasons stated therein. *Vazza Properties, Inc.* v. *City Council of Woburn*, 1 Mass. App. Ct. 308, 312 (1973) ("the nature of the findings of fact the judge is required to make must be governed by the nature of the reasons a board gives for its deci-

---

[3] The findings were based on testimony by the plaintiff's expert, an outstanding authority on salt marshes, that "[t]he production from the marsh is important in that it gets out into estuaries and provides food for various shellfish that live there. Water fowl come into the marshes and feed there. . . . We are now finding out also that marshes have value in absorbing nutrients and pollutants from coastal waters, and serving as areas to provide nutrients for the production of the coastal waters." He also testified that the marsh "suppl[ied] them [the fish] with food [and] with refuge areas" and referred to "the ability of the marsh to fertilize the waters around it . . . the value of marshes as a feeding place for wildlife, water fowl particularly . . . [and] the general productivity values, pollution control values."

sion.") Cf. *Parrish* v. *Board of Appeal of Sharon,* 351 Mass. 561, 567-568 (1967) (denial of building permit upheld where applicant was clearly not entitled, but for reasons not given by the board of appeals). But if any reason on which the board can fairly be said to have relied has a basis in the trial judge's findings and is within the standards of the zoning by-law and The Zoning Enabling Act, the board's action must be sustained regardless of other reasons which the board may have advanced. *Vazza Properties, Inc.* v. *City Council of Woburn, supra. Copley* v. *Board of Appeals of Canton,* 1 Mass. App. Ct. 821 (1973). Here the plaintiff concedes, indeed protests, that the primary concern of the board was with the filling of the marsh. We therefore do not accept the plaintiff's suggestion that we must treat all four reasons as so far interdependent that the failure of one is the failure of all.

We turn to the plaintiff's major argument that the board's denial of the special permit on the ground that it would require the filling of marshland is legally untenable and arbitrary. We note first that the plaintiff quite properly assumes that the preservation of marshland is a legitimate purpose within the ambit of The Zoning Enabling Act and does not argue to the contrary. See *Golden* v. *Selectmen of Falmouth,* 358 Mass. 519, 522-523 (1970), and *MacGibbon* v. *Board of Appeals of Duxbury,* 369 Mass. 512, 517 (1976). Nor does the plaintiff contend that the action of the board is confiscatory, for under the by-law the plaintiff may, as of right, develop the property for residential purposes (see fn. 1). Cf. *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 641 (1970). See *Commissioner of Natural Resources* v. *S. Volpe & Co. Inc.* 349 Mass. 104, 111 (1965); *Turnpike Realty Co. Inc.* v. *Dedham,* 362 Mass. 221, 235 (1972), cert. den. 409 U. S. 1108 (1973). The contention made by the plaintiff is narrower. It focuses on the requirement of the by-law that the use for which a special permit is sought "is not injurious, noxious or offensive." The plaintiff argues that the injury to the ecology arising from the filling of the marsh will be no

more severe if the marshland is filled for the plaintiff's golf course than if it is filled to construct a nonprofit golf course which (we assume for the sake of argument and without deciding) is permitted as of right as a "nonprofit recreational purpose" and less severe than if it is filled for a residential development, also a permitted use as of right.

It does not follow, however, that the board's action did not comport with the standard in the by-law for a special permit so that it can be said that its action was legally untenable or arbitrary. "Injurious" is not an absolute term. The town, in permitting housing and nonprofit golf courses as of right in the marsh and thus tolerating its destruction by those uses expressed the judgment that on balance the result was advantageous to the town rather than "injurious." The town did not make the same choice between marshland and a golf course operated for profit but left it to the board to decide, pursuant to its special permit power, whether on balance a choice in favor of a commercial golf course which would destroy marshland was "injurious" rather than advantageous to the neighborhood or the town.

In the context of the special permit power the word "injurious" has a broad meaning relating directly to the "purpose and intent of the ... by-law." G. L. c. 40A, § 4. And this purpose includes "promoting the health ... convenience ... or welfare of its inhabitants" (§ 2) and "to encourage the most appropriate use of land throughout the city or town; and to preserve and increase its amenities" (§ 3). *Simeone Stone Corp.* v. *Oliva,* 350 Mass. 31, 37-38 (1965). See *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. at 638; *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. at 295. Cf. *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 60-62 (1971). The word "injurious" also draws significance from the power of the board under the by-law to impose such conditions as "are deemed necessary to protect the neighborhood and the town." The purpose of such conditions is quite clearly to obviate the injury which might otherwise preclude a permit. The by-

law itself thus establishes a congruence between the standard "not injurious" and the "protect[ion of] the neighborhood and the town."

Accordingly, the word "injurious" is sufficiently broad "to permit . . . the board to exercise 'judgment' concerning the public welfare in passing on [a] request . . . for exception." See *Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 483-485 (1970). The by-law grants no absolute right to a permit. *Humble Oil & Refining Co.* v. *Board of Appeals of Amherst*, 360 Mass. at 605. When the board chose to retain a salt marsh rather than permit a commercial golf course in order to "protect . . . the town" and thus to prevent injury to the town its action was consistent with the standard of the by-law and not arbitrary. Compare, e.g., *Moore* v. *Cataldo*, 356 Mass. 325, 328-329, 331 (1969) (special permit for nursing home is within "public welfare and convenience" in view of the shortage of such facilities). Nor was the board's action otherwise unreasonable since the owner is not deprived of the practical use of his land (see fn. 1).

Accordingly, the action of the board should be affirmed. However, there is no basis for a finding (nor did the Superior Court find) that the plaintiff acted "in bad faith or with malice" in bringing this action. G. L. c. 40A, § 21. The assessment of costs by the Superior Court against the plaintiff was therefore erroneous. Cf. *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. at 520; *Salah* v. *Board of Appeals of Canton*, 2 Mass. App. Ct. 488, 497 (1974). The judgment of the Superior Court is to be modified to affirm the action of the board and delete the provision for costs; as so modified the judgment is affirmed.

*So ordered.*