TEXSTAR CONSTRUCTION CORP. *vs.* BOARD OF APPEALS OF DEDHAM. No. 87-984. October 13, 1988. *Zoning,* Special permit; Board of appeals: decision, Nonconforming use or structure.

Texstar Construction Corp. (Texstar), a Texas-based corporation, is engaged in the construction business, principally as a subcontractor specializing in lifting slabs for multi-story buildings. Since 1981 it has operated its regional business from property that it owns at 90 Pleasant Street, Dedham. There are two buildings on the property: a two-story wooden structure and an adjacent brick one-story building. The wooden structure is used by Texstar as living quarters and an office building. The brick building is utilized essentially as a garage to load, unload and park trucks used in the construction business. It is also used to store construction equipment and materials. Texstar's property is located in an area zoned for single-family residential use. As the buildings were used for nonresidential purposes prior to the enactment of the zoning by-law, they constitute a nonconforming use.

That by-law allows an extension or alteration of a nonconforming building or use under certain conditions. Section VII-2-2 of the by-law states that the board "may authorize by special permit . . . a non-conforming building or structure to be altered or enlarged, provided that such extension, alteration or enlargement: (a) [w]ill not have a material adverse effect on the value of land and buildings in the neighborhood or on the amenities thereof, or be detrimental to the normal use of adjacent property, and (b) [w]ill not be injurious or dangerous to the public health or hazardous because of traffic congestion or other reasons."

Texstar made application to the board for three special permits, two of which concerned structural changes in the brick building. Those requests were (1) to enlarge an existing 12′ by 12′ overhead door to a 14′ by 13′ door and (2) to install a steel framework side door on the westerly side of the

building. Texstar also requested a permit to park a commercial vehicle behind the building for short periods of time, not to exceed thirty days, for the purposes of loading and unloading.[1]

At the hearing on Texstar's requests, a representative of the company informed the board that the structural changes would allow it to load and unload its vehicles more expeditiously and therefore relieve traffic congestion. The representative also argued that the parking permit should be granted because such parking was an accessory use to its business. Several neighbors spoke in opposition to the granting of the special permits. They cited noise and traffic congestion caused by Texstar's eighteen-wheel tractor-trailers entering and leaving the property.

The board unanimously denied Texstar's three applications for special permits. It found that granting the requested permits to make structural changes in the building would result in increased activity at the site. Such activity, the board concluded, would add noise and traffic congestion which would be detrimental to the surrounding residential community. The board further found that the parking of trucks or trailers on the property would not be an accessory use. It denied that request, concluding that, "[b]ased upon the limited space at [Texstar's] location, the parking of vehicles for any length of time would only serve to further impede the flow of traffic onto and off the property."

Texstar appealed from the board's decision to the Superior Court. G. L. c. 40A, § 17. After a trial, the judge issued a memorandum of decision that included his findings of fact and conclusions of law. He found that the structural changes to the building would not be detrimental to the neighborhood and that the parking on the property would be an accessory use. He therefore ruled that the board's decision denying the three special permits was unreasonable, arbitrary and capricious. He also ruled that the board's denial of the permits was based on legally untenable grounds and ordered the board to issue the special permits. The board argues that its decision not to grant the permits was not arbitrary, unreasonable or capricious and that the judge erred in substituting his judgment for that of the board. It further denies that its decision was based on legally untenable ground.

"The task of the Superior Court was to determine whether this applicant for a special permit was able to demonstrate at a de novo hearing (*Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 [1972]) that 'the board has based its decision on a "legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." ' *Humble Oil & Refining Co.* v. *Board of Appeals of Amherst*, 360 Mass. 604, 605 (1971), quoting from *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970), and citing *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969)." *S. Volpe & Co.* v. *Board of Appeals of Wareham*, 4 Mass.

---

[1] Section III-4-2 of the by-law allows the board to grant a special permit to place a trailer on land for a period not exceeding thirty days in the aggregate for any one year.

App. Ct. 357, 359 (1976). Also see *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 711-712 (1988).

The denial of the special permits was within the discretion of the board. *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. at 638. *Vazza Properties, Inc.* v. *City Council of Woburn*, 1 Mass. App. Ct. 308, 311-312 (1973). A judge in "reviewing a decision of the board denying a permit does not possess the same discretionary power as does the board . . . ." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486 (1979). The "board may deny [a permit] even if the facts showed that a permit could be lawfully granted." *Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 484 (1970). "To hold that a decision of the board denying a permit is arbitrary and capricious per se whenever the board, on the facts found by the trial judge, could have granted a permit, would eliminate the board's intended discretion." *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. at 277-278.

The board based its decision to deny the permits for structural changes on its finding that the requested changes would result in increased activity at the site and be detrimental to the neighborhood. That decision was not arbitrary, unreasonable or capricious. On this record, the parking of tractor-trailers on the property would not have been an accessory use, and the permit was properly denied by the board.

Finally, the judge held that the permits were denied on legally untenable grounds because the board took into consideration Texstar's prior zoning violations. There is no question that, if the board had grounded its denial solely upon Texstar's prior zoning violations, it would have exceeded its legitimate authority. *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. 148, 157 (1977). "We think no one has a legal right to a [special permit]. If a case should come to us in which an owner had been denied a [special permit] solely upon a legally untenable ground and the board should indicate that except for that ground the [special permit] would have been granted, perhaps the court could give relief." *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 559 (1954). But that case is not before us. The board's decision to deny the special permits was not based solely on the ground of Texstar's prior zoning violations.

The judgment is reversed and a new judgment is to be entered declaring that the board's decision was not in excess of its authority.

*So ordered.*

*Paul D. Maggioni,* Town Counsel, for the defendant.
*Philip S. Levoff* for the plaintiff.