T. WESTON SCHIFFONE *vs.* ZONING BOARD OF APPEALS OF WALPOLE. No. 89-P-603. May 22, 1990. *Zoning*, Variance; Special permit; Board of appeals: decision. *Practice, Civil*, Zoning appeal.

This is an appeal by the zoning board of appeals of the town of Walpole (board) from a judgment entered in the Land Court annulling the board's refusal to issue a special permit which would allow the plaintiff to construct six multifamily buildings in Walpole. The judge directed the board to grant the special permit and remanded the plaintiff's application for site plan approval to the board.

The following facts are based on the findings of the Land Court judge and a stipulation between the plaintiff and the board. The plaintiff sought to construct six multifamily dwellings containing a total of thirteen residential condominium units at 240-242 Plimpton Street in Walpole. The property is located within a "General Residence District." Under § 2-A of the town's zoning by-law, such districts have the following purpose: "to provide an area for low density, single and multi-family residential land use, public, semi-public, institutional and recreational uses and professional offices compatible with low density, residential land uses, and to provide a transition area between single family residential and commercial or industrial land uses." Section 4-C-4 of the by-law further provides: "In all residential zones not more than one (1) building constructed as a dwelling or so used shall be located on each lot. However, in General Residence Districts, the Board of Appeals may by special permit (SP1 under 3-B-7) allow more than one (1) building on a lot where four (4) or more dwelling units are to be accommodated on said lot. . . ." A special permit may not

be granted under § 4-C-4 unless each of seven conditions set forth in § 3-B-7 is fulfilled.

On October 26, 1987, the plaintiff filed an application for a special permit and a request for site plan approval with the town clerk. On February 10, 1988, the board denied the plaintiff's application on the following grounds:

> "It is the finding of the [b]oard that not all of the conditions set forth in Section 3-B-7 of the [z]oning [b]y-laws were shown to be fulfilled as required, specifically, that:
>
> "SP-1 ii   'shall not have a number of residents, employees, customers, or visitors so as to adversely [a]ffect the immediate neighborhood . . .'
> Thirteen residential condominium units, provided in six dwellings, is excessive.
>
> "SP-1 vi  'shall not adversely [a]ffect the character of the immediate neighborhood . . .'
> The crowding of the buildings into a limited section of a lot (due to its pork-chop configuration) will adversely [a]ffect the character of the neighborhood.
>
> "SP-1 vii 'shall not be incompatible with the purpose of the [z]oning [b]y-law or the purpose of the zoning district in which the premises is located . . . '
> The crowding of the buildings upon the lot is contrary to the desire for space, using the entire configuration of the lot."

The board further found that, because it denied the special permit, the request for site plan approval was moot. The board subsequently issued a "Supplemental Decision" denying approval of the site plan.

On March 8, 1988, the plaintiff appealed the board's decision to the Superior Court pursuant to G. L. c. 40A, § 17. On May 2, 1988, the case was transferred to the Land Court upon the plaintiff's motion pursuant to G. L. c. 212, § 26A. A trial was held on October 24, 1988. Five witnesses testified, eleven exhibits were presented, and the judge viewed the locus in the presence of counsel.

The judge, hearing the case de novo, made the following findings of fact. The tract of land upon which the plaintiff proposes to build is of "pork chop" configuration, with an over-all area of 4.1 acres and 131.87 feet of frontage on Plimpton Street. The development would consist of six buildings containing a total of thirteen residential condominium units. The neighborhood surrounding the property is comprised of relatively old one-, two-, and three-story single and multifamily residences. Adjacent to the area containing the locus are apartment buildings, an MBTA rail line, a shopping center, and a gas station.

The judge found that the board's decision "fails to include a definite statement of rational causes and motives, founded upon adequate findings" in violation of the mandate of G. L. c. 40A, § 15, as appearing in St. 1987, c. 498, § 3, that "[t]he board shall cause to be made a *detailed* record of its proceedings . . . setting forth *clearly* the reason for its decision . . ." (emphasis supplied). Specifically, with respect to the board's statement regarding SP-1 ii that the proposed number of units in the project was "excessive," the court stated that "the [b]oard neglects to disclose the source of the problem it anticipates, namely whether the proposed development will generate an excessive number of 'residents,' 'employees,' customers,' 'visitors,' or a combination of all four." The judge also found no evidence that the plaintiff's project would result in the presence of more residents (or other persons) than if the locus consisted of single family residences.

The judge also disagreed with the board's determination, regarding SP-1 vi and SP-1 vii, that "crowding of the buildings into a limited section of a lot (due to its pork chop configuration) will adversely [a]ffect the character of the neighborhood" and that such crowding "is contrary to the desire for space, using the entire configuration of the lot." The judge, citing dimensional requirements of the town's by-law,[1] stated that "[s]imple arithmetic reveals that the [p]laintiff's proposed development allows for an excess of this area requirement." The judge further stated that "as there is no set configuration for such multi-family dwellings specified in the [b]y-law, the fact that the proposed development uses the land in a 'pork chop' configuration may not constitute grounds for attack by the [b]oard, the [b]oard being powerless to impose density requirements beyond those established by the [b]y-law." Based on these grounds, the judge annulled the board's decisions, directed the board to issue a special permit to the plaintiff, and remanded the matter to the board for consideration of the plaintiff's application for site plan approval. The board argues that its decision not to grant the special permit was not arbitrary, unreasonable, or capricious and that the judge erred in substituting his judgment for that of the board.

"The task of the [Land] Court was to determine whether this applicant for a special permit was able to demonstrate at a de novo hearing (*Josephs v. Board of Appeals of Brookline*, 362 Mass. 290, 295 [1972]) that 'the board has based its decision on a "legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary."' *Humble Oil & Ref. Co. v. Board of Appeals of Amherst*, 360 Mass. 604, 605 (1971), quoting from *MacGibbon v. Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970),

---

[1]The judge stated that § 4-B of the by-law provides that any building located on a "General Residence District" must have a minimum required lot area of 15,000 square feet. The by-law is not in the record, but the court's statement of its provisions is not disputed.

and citing *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969)." *S. Volpe & Co.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357, 359 (1976). Also see *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 711-712 (1988).

The denial of special permits is within the discretion of the board. *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. at 638. *Vazza Properties, Inc.* v. *City Council of Woburn*, 1 Mass. App. Ct. 308, 311-312 (1973). A judge in "reviewing a decision of the board denying a permit does not possess the same discretionary power as does the board . . . ." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486 (1979). The "board may deny [a permit] even if the facts showed that a permit could be lawfully granted." *Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 484 (1970). "To hold that a decision of the board denying a permit is arbitrary and capricious . . . whenever the board, on the facts found by the trial judge, could have granted a permit, would eliminate the board's intended discretion." *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. at 277-278. Also see *Texstar Constr. Corp.* v. *Board of Appeals of Dedham*, 26 Mass. App. Ct. 977, 979 (1988). "[I]t is 'the board's evaluation of the seriousness of the problem, not the judge's, which is controlling.' " *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, *supra* at 488, quoting from *Copley* v. *Board of Appeals of Canton*, 1 Mass. App. Ct. 821 (1973).

In the instant case, the judge's decision to annul the board's decision was based, in large extent, on his conclusion that the decision was supported by inadequate findings. We agree that "the requirements for findings which support the grant of a variance or special permit are rigorous . . . ." *Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 220 (1982). However, the refusal of a board to grant a special permit, as here, does not require detailed findings by the board. *Cefalo* v. *Board of Appeal of Boston*, 332 Mass. 178, 181 (1955). *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 515 (1976). *Gamache* v. *Acushnet*, *supra*.

The board's decision included adequate findings and reasons in compliance with G. L. c. 40A, § 15. Specifically, the board found that the proposed number of residential condominium units was excessive and, therefore, in violation of condition SP-1 ii of the by-law. The board also found that the crowding of the buildings into a limited section of the lot because of its "pork chop" configuration adversely affected the neighborhood in violation of the by-law.

Based on this record, the board's decision was not arbitrary, unreasonable, or capricious. The judgment is reversed and a new judgment is to be entered declaring that the board's decision was not in excess of its authority. Because of our decision, the remand by the judge of the plaintiff's application for site plan approval is moot.

*So ordered.*

*Everett J. Marder*, Town Counsel, for the defendant.
*Israel J. Herzog* (*Patricia K. McEnany* with him) for the plaintiff.