Brassard, J.
FINDINGS OF FACT
Based on all of the credible evidence and all reasonable inferences drawn from that evidence, the court finds the following facts:
*52 1. Framingham Auto Sales, Inc d/b/a Framingham Ford (“Framingham Ford”), purchased a 6.3 acre parcel of land (“locus” on the eastbound lane of Route 9 in Framingham on December 21, 1994, with the intention of relocating its automobile dealership to that site from the current site, about one mile away.
2. Locus abuts a 27 acre apartment complex owned by the plaintiff, R.D.C. Waterview Associates, LP. The apartment complex is known as Edgewater Hill apartments, and consists of four six-story buildings, 1,020 rental units, housing approximately 2,000 residents, with parking for over 1,500 cars. Both locus and the apartment complex are located in the same business zoning district.
3. The apartment complex and locus have cross easements over each other’s properly (and that of a third person, not a party here) for vehicular and pedestrian passage to and from the respective properties, Route 9, and Country Club Lane.
4. A motel, two restaurants, and a night club were previously located at locus. The apartment complex has made use of the twenty foot wide easement as one access to and from Route 9 since 1984, when R.D.C. purchased the apartment complex. Until the demolition of the motel/restaurant structures, that access by the apartment complex was essentially through the parking lots then on locus.
5. Framingham Ford proposes to make use of the twenty foot easement, as relocated, as a parking aisle. Framingham Ford proposes that the twenty foot easement be used not only for access on the part of the residents of Edgewater Hill, but also for a parking aisle within the automobile dealership to be constructed on locus.
6. Framingham Ford proposes 521 parking spaces for locus, 208 of which would be for customer and employee parking, and the balance for automobile inventory. A significant number of parking spaces would be located within two feet of the relocated easement; most, if not all, of these spaces would be used for automobile inventory.
7. Framingham Ford proposes to relocate the easement, and expand it from its current width of twenty feet to twenty four feet.
8. The only other access to and from Route 9 for Edgewater Hill apartments is Country Club Lane. Presently, access from the property of the apartment complex to Country Club Lane is difficult because the intersection of Route 9 and Country Club Lane is frequently backed up with heavy traffic. An automobile seeking to enter onto Country Club Lane from the apartment complex in effect seeks to cut into the front of the line.
9. The site plans and other development plans were reviewed and approved by a number of agencies within the town of Framingham including its Planning Board Staff, DPW, Engineering, and Conservation Commission.
10. Framingham Ford in turn has an easement over the Edgewater Hill apartment property. This easement runs through the parking lot for the apartment complex, and is coterminous with at least some of the parking aisles in the apartment complex property, i.e. parking spaces are located on one or both sides of the travel easement in favor of Framingham Ford.
11. The estimated number of trips to and from the Framingham Ford property is 1,846 per 14 hour period of time in each day during which the automobile dealership would be open for business. In addition, the estimated number of daily trips to and from the Edgewater Hill apartment complex and Route 9 over the easement is 441 trips per 24 hour time period.
12. The Zoning Board of Appeals has required as a condition to its permits a number of improvements, in two phases, Phase I and Phase II. In Phase I, to be accomplished at the time of occupancy by Framing-ham Ford, a new northbound lane will be added on the eastern side of Country Club Lane. Further, an acceleration/deceleration lane would be added alongside the locus on Route 9. Finally, the traffic lights would be re-timed at the intersection of Country Club Lane and Route 9.
13. In Phase II, the Massachusetts Highway Department will add an additional lane to the eastbound and westbound lanes of Route 9, and will reconstruct the signals at the intersection of Route 9 and Country Club Lane.
14. Phase II would not be done in conjunction with occupancy of the project. Phase II would be accomplished when construction funding is approved by the state. The engineering costs for Phase II would be funded by Framingham Ford.
15. The improvements to Country Club Lane in Phase I will likely decrease the use of the easement by residents of the apartment complex because Country Club Lane would become a more viable alternate route.
16. At the request of the parties, the court took a view of locus and the surrounding area. When residents of the apartment complex leave their apartment buildings, they travel by car or foot, for the most part, along parking aisles within the apartment complex. If, after the improvements are constructed, they access Route 9 by the easement on the Framingham Ford property, they will continue to travel, for the most part, along what will be parking aisles.
CONCLUSIONS OF LAW
1. At the conclusion of the trial, counsel for all the parties agreed that the appeal by R.D.C. of the decision by the Zoning Board of Appeals, 94-4789, would be withdrawn with prejudice. The parties filed a Joint Stipulation which sets forth the improvements to be accomplished in Phase I and Phase II. Accordingly, the *53 court finds that the decision of the Zoning Board of Appeals was not in excess of its authority.
2. Section IV.B.2.e. of the zoning by-law, provides in part as follows: “No parking . . . aisles shall be laid out on land which is reserved as a vehicular right-of-way, whether developed or undeveloped and whether public or private.” Section IV.B.3.C. of the by-law also provides with respect to off-street parking the following: “In no case shall [parking] stalls be so located as to require the backing or maneuvering onto the sidewalk or into a public or private way upon entering or leaving the stall.”
3. The only legal issue raised by the plaintiff in this case is whether the site plan review special permit granted by the planning board, and the off-street parking special permit granted by the planning board, are beyond the authority of the planning board because those permits violate the above referenced provision of the zoning by-law and are therefore “based on a legally untenable ground.” MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639 (1970).
4. That issue, in turn, reduces to the question of whether the travel easement over the Framingham Ford property in favor of the apartment complex is a private vehicular right of way, or a private way.
5. Testimony from one of the engineers for Framing-ham Ford was uncontroverted to the effect that those terms have been consistently construed by the relevant officials of the Town of Framingham as not applicable to the kind of cross easement present in this case. Various town officials reviewed and approved the plans in this case, and have done so in other similar matters.
6. The construction, particularly of a somewhat ambiguous term like “private way,” Opinion of the Justices, 313 Mass. 779, 781-82 (1943), by the officials charged with administering the by-law or ordinance in question, is entitled to weight, and this Court gives significant weight to the Town’s uniform construction of its by-laws. Murray v. Board of Appeals of Barnstable, 22 Mass.App Ct. 473, 479-80 (1986).
7. The easement at issue in this case is not the sort of way to which the public in general has the right to traverse. By its terms, the easement is for the benefit of the respective property owners, their tenants, guests and invitees. The easement at issue in this case leads only to the property of Framingham Ford and the apartment complex. Furthermore, the easement may be relocated according to its own terms, and is maintained by private parties. The easement is not the kind of private way which provides lawful frontage for the subdivision or development of land. G.L c. 41 §81L. The easement in this case much more closely approximates in its characteristics an internal driveway, and not a way for travel.
8. The Court concludes that the Town’s interpretation of the by-law is the correct one. The by-law provisions at issue do not seek to regulate a driveway-type connection between or among a very limited number of properties which abut one another.
9. The property of R.D.C. is subject to a similar easement for the benefit of the owner of the Framing-ham Ford property. That easement is coterminous with what is essentially a parking aisle, with parking on one or both sides of the aisle, through a portion of the property of R.D.C. The plaintiff thus seeks to prevent the development of the property of Framing-ham Ford in precisely the same fashion in which the plaintiff developed its own property. The plaintiff may not have standing to do so. Cf. Waltham Motor Inn, Inc. v. LaCava, 3 Mass.App.Ct. 210, 217 (1975) (plaintiffs not parties aggrieved where plaintiffs had benefit of same zoning relief now challenged by them). The plaintiff, on the other hand, does have a property interest in the locus itself, and claims particular harm because of the parking plan approved by the planning board. The Court, accordingly, grounds its decision on the merits.
10. The decisions of the planning board granting the site plan review special permit and the off-street parking special permit were not in excess of the authority of the planning board.
11. Judgment to enter accordingly.