ACW REALTY MANAGEMENT, INC. *vs.* PLANNING BOARD OF
WESTFIELD.

No. 94-P-689.

Hampden. June 5, 1995. - April 1, 1996.

Present: WARNER, C.J., SMITH, & FLANNERY, JJ.

*Zoning,* By-law, Special permit, Gasoline station. *Planning Board.*

A Housing Court judge incorrectly ordered annulled a decision of a plan-
ning board that denied an application for a special permit to construct a
gasoline service station and convenience store where the board's findings
were adequate to support its conclusions that a gasoline service station
could threaten the nearby water supply and that the proposed twenty-
four-hour-a-day operation of the business and increased traffic would
adversely affect the neighborhood. [246-248]

CIVIL ACTION commenced in the Hampden Division of the
Housing Court Department on March 16, 1993.

The case was heard by *William H. Abrashkin,* J.

*Mary Jane Eustace,* Assistant City Solicitor, for the defen-
dant.

*Neva Kaufman Rohan* for the plaintiff.

SMITH, J. The planning board of Westfield (board) appeals
from a judgment, entered in the Housing Court, after two tri-
als, annulling the board's decision not to grant a special
permit to ACW Realty Management, Inc. (ACW), to
construct a gasoline service station and convenience store and
ordering the board to grant the special permit.

We summarize the pertinent facts. ACW is the owner of a
parcel of land consisting of approximately one and one-half
acres, located at the corner of East Mountain Road and Route
202 in Westfield. The parcel is located in the "Business A -
General Business District." Within such a district, gasoline
service stations are not allowed as of right but only by a
special permit granted by the board.

ACW applied for a special permit. See G. L. c. 40A, § 9.
Under § 2405 of the zoning by-law, the board is authorized

to issue a special permit if it finds that four conditions are satisfied. The conditions are:

"1.  The specific site is an appropriate location for such a use, structure or condition.

"2.  The use as developed will not adversely affect the neighborhood.

"3.  Adequate and appropriate facilities will be provided for the proper operation of the proposed use.

"4.  The plan as approved conforms to all rules and regulations unless specifically waived."[1]

After a hearing, the board voted (four to three) to deny the special permit. In its statement of reasons, the board found that the proposed gasoline service station would have an adverse impact upon the neighborhood and that the parcel is not an appropriate site for a gasoline service station because (1) "[t]he site is located on a regional aquifer . . . in the vicinity of Westfield Wells 7 and 8 and is in a neighborhood where there are many home owners with private wells. A gasoline station at this location poses too great a potential for contamination of the [c]ity water supply as well as the water supplies of Southampton, Easthampton and Holyoke"[2] and

---

[1]The board agreed that ACW's plan did conform to the board's rules and regulations.

[2]Prior to ACW submitting its application for a gasoline service station and a convenience store, the zoning by-law had been amended by the creation of an "Aquifer Protection District." The District was created "[t]o promote the health, safety and welfare of the community by protecting and preserving the groundwater resources of Westfield from any use of land or structures which reduce the quality or quantity of its water resources." The Aquifer Protection District was established as an "overlay district" to be superimposed on the other districts. At the time of ACW's application for a special permit, a parcel was designated to be in the Aquifer Protection District if it was in a primary recharge area of groundwater aquifers. The Aquifer Protection District overlaps parts of the Business District because portions of the Business District lie in primary recharge areas. Other parts of the Business District are in secondary recharge areas or in lands not identified as recharge areas. While the board found that the locus was in a secondary recharge area, on appeal, based on additional evidence submitted at the second trial, the board argues that the locus is in a primary recharge area, and, therefore, gasoline service stations are prohibited. ACW contends that the locus is in a secondary recharge area, and gasoline service stations are allowed by a special permit. The judge found that the locus is in a secondary recharge area.

(2) "[m]embers also noted that the increase in traffic would cause a hazard and the proposed offer [by ACW] of $50,000 toward a traffic signal was not sufficient."

After the board's decision, ACW filed a complaint in the Housing Court, claiming that the board's denial of the special permit was arbitrary and capricious and exceeded the authority of the board.

After a trial, the judge ruled that the decision of the board was annulled because it "did not apply the proper legal standard to its determination." The judge remanded the matter to the board "for reconsideration of [ACW's] application and for the rendering of a new decision consistent with the legal standards stated herein." The judge ordered the board not to hold any further public hearings on the matter but, rather, to make its decision from the existing record. The judge allowed both parties to submit written arguments to the board. The judge retained jurisdiction over the matter in case either party sought judicial review following the board's reconsideration.[3]

On remand, the board voted again to deny ACW a special permit. In so doing, the board readdressed the conditions that an applicant must meet before a special permit is granted.[4] With respect to the first condition, the board found that the proposed gasoline station and convenience store would be in "an environmentally sensitive area," with some domestic

[3]In remanding the matter to the board, rather than annulling the board's decision and ordering the board to issue the special permit, the judge stated as follows: "The basic point of the [remand order] was that the [b]oard applied an incorrect legal standard to its determination. It was clear to the court that the [b]oard decision was based almost entirely on its concern that placing a gasoline station in a secondary recharge area might jeopardize the aquifer, regardless of where in the area the gasoline station was placed or the characteristics of the proposed station. Where a board decision is based substantially upon the use of an incorrect legal standard, correction by the courts is particularly appropriate, and that is why the court clarified the governing standard but remanded the case for the fact-finding and the decision-making to be done by the [b]oard, subject to further review by the court if necessary. Those unfamiliar with special permit and variance cases should understand that remands for further factfinding and statements or reasons are in no way unusual in such cases; on the contrary, remand orders are often made because they can help to preserve the proper balance between the roles of local boards and the courts."

[4]Again, there were no issues with regard to the fourth of the four conditions. See note 1, *supra*.

wells located 600 to 800 feet from the underground gasoline storage tanks and the above ground gasoline dispensing areas, and that "Pequot Pond is within 1,500 feet of the site. The proximity to these water sources makes this site unique. The threat to these water sources, from contaminated stormwater runoff, is significant and cannot be disregarded." As to the second condition, the board noted that "the hours of operation are not appropriate for this neighborhood. Currently, there are no neighborhood businesses that operate 24 hours a day, seven days a week. The addition of a 24 hour a day facility would change the rural and residential character of this neighborhood." Finally, addressing the third condition, the board found "the volume of traffic generated by this type of project would worsen an already dangerous traffic situation. The addition of a traffic signal at the intersection would not remedy this situation. Most vehicles would enter and exit through the curb cuts on North Road (Route 202) and not through the signalized intersection. This dangerous situation would be compounded by the downgrade and curve of North Road (Route 202) when vehicles approach the site from Holyoke."

ACW again filed a complaint in the Housing Court, seeking judicial review of the board's decision. A trial was held before the same Housing Court judge who had presided at the first trial. After the trial, the judge issued a memorandum of decision in which he ordered the second decision of the board annulled and also ordered the board to issue a special permit.

The judge examined each one of the findings that the board had made in denying the special permit. He ruled that, "insofar as the [b]oard's decision cites an environmental threat as a basis for denial of [ACW's] application, it is arbitrary and unsupported by substantial evidence." According to the judge, the board did not present rebuttal evidence to establish the effect, if any, that gasoline spillage or leaking from the subject locus might have upon municipal water supplies . . . . No evidence was presented tending to establish a probability or even a significant possibility that gasoline will find its way into local wells as a result of this use." In regard to the board's finding that the proposed use would change the rural and residential character of the neighborhood, the judge stated that "it is not fully accurate to characterize the

neighborhood as rural and residential." Therefore, as to that finding by the board and its finding that there would be an increased traffic hazard, the judge concluded that those findings were arbitrary because they were "inconsistent with the purpose of the business zone" and "no evidence was presented that the proposed use will result in any significant increase in traffic, and because the very purpose of a business zone is to permit the existence of businesses that attract customers and, hence, traffic to the locale."

The denial of special permits is within the discretion of the board. *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 638 (1970). *Vazza Properties, Inc.* v. *City Council of Woburn*, 1 Mass. App. Ct. 308, 311-312 (1973). In addition, "[a] judge reviewing a decision of the board denying a permit does not possess the same discretionary power as does the board, and the decision of the board can only be disturbed 'if it is based on a legally untenable ground' . . . or is 'unreasonable, whimsical, capricious or arbitrary.'" *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486 (1979), quoting from *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277-278 (1969). The "board may deny [a permit] even if the facts showed that a permit could be lawfully granted." *Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 484 (1970). "To hold that a decision of the board denying a permit is arbitrary and capricious per se whenever the board, on the facts found by the trial judge, could have granted a permit, would eliminate the board's intended discretion." *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. at 277-278. "Very few trial decisions ordering the issuance of a special permit . . . denied by a granting authority have been upheld at the appellate level." Bobrowski, Massachusetts Land Use and Planning Law § 11.5 (1993).

Here, the judge's decision to annul the board's decision was based, in large extent, on his conclusion that the decision was supported by inadequate findings. "However, the refusal of a board to grant a special permit, as here, does not require detailed findings by the board." *Schiffone* v. *Zoning Bd. of Appeals of Walpole*, 28 Mass. App. Ct. 981, 984 (1990).

The board's findings in both its first and second decision were adequate. Protection of groundwater is a valid public interest. *Lovequist* v. *Conservation Commn. of Dennis*, 379

Mass. 7, 18-19 (1979). See also St. 1975, c. 808, § 2A (the "objectives" of the Zoning Act include facilitating the adequate provision of water and water supply). There existed a genuine dispute between the board and ACW as to the location of the primary recharge area and its proximity to the proposed gasoline service station. See note 2, *supra*. The fact that there is a dispute over such a vital matter demonstrates that the board had a reasonable basis for its concern with regard to maintaining the integrity of the aquifer, a major water supply source for the city. Although the judge found that the site is in a secondary, rather than a primary, recharge area, such location still supports a conclusion that a gasoline service station could threaten the nearby water supply. "If reasonable minds could differ on the seriousness of a problem in relation to the issuance of a special permit, it was the board's decision, and not the court's, which was controlling." *Kinchla* v. *Board of Appeals of Falmouth*, 11 Mass. App. Ct. 927 (1981).

Also, there was sufficient basis to warrant the board's conclusion that the twenty-four-hour-a-day nature of the gasoline station would adversely affect the character of the neighborhood. At the time of the board's second decision, no other business in the area was open twenty-four hours. The judge acknowledges that the area is not densely developed but states that "it is not fully accurate to characterize the neighborhood as rural and residential." This appears to be another instance where reasonable people could differ both on the characterization of the neighborhood and the effect of the gasoline station on its character. "In such circumstances the board's decision was not arbitrary and must prevail." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. at 488.

Finally, increased traffic is also a legitimate concern of the board in determining whether a proposed use would have an adverse effect on the neighborhood. *Federman* v. *Board of Appeals of Marblehead*, 35 Mass. App. Ct. 727, 732 (1994). Although its members admittedly relied on a traffic study that was several years old, the board concluded that the addition of a gasoline station would render an already busy intersection hazardous. "The board was not limited to examining present conditions and it could consider the future development of the area." *Humble Oil & Refining Co.* v.

*Board of Appeals of Amherst*, 360 Mass. 604, 606 (1971). While the evidence presented to the board did not compel this conclusion, it warranted such a conclusion, and the judge should not have substituted his judgment for the board's. *Kinchla* v. *Board of Appeals of Falmouth*, 11 Mass. App. Ct. at 927. "It was the duty of the board to consider what adverse effects on the neighborhood the proposed use[ ] might produce. . . . The board properly considered the future effect of the proposed [gasoline station] on the neighborhood, and the evidence was not too speculative" (citations omitted). *Ibid*.

Since the order compelling the board to issue a permit requires reversal, we do not consider the other issues. The judgment is reversed, and a judgment is to be entered that the February 23, 1993, decision of the board denying a special permit did not exceed its authority.

*So ordered.*