BOARD OF ALDERMEN OF NEWTON *vs.* HENRY MANIACE
& others.[1]

No. 97-P-1774.

Suffolk. February 5, 1998. - December 1, 1998.

Present: PERRETTA, JACOBS, & LAURENCE, JJ.

Further appellate review granted, 428 Mass. 1112 (1999)

*Zoning,* Special permit, Site plan approval, Constructive grant of relief. *Municipal Corporations,* Board of aldermen. *Words,* "Final action."

An application for a special permit and site plan approval was granted constructively where the special permit granting authority filed with the city clerk only the vote of the board, and did not timely file any "reason for its decision" as required by G. L. c. 40A, § 9, tenth and eleventh pars. [831-834]

CIVIL ACTION commenced in the Superior Court Department on October 7, 1996.

The case was heard by *Peter W. Kilborn,* J., sitting under statutory authority, on a motion for summary judgment.

*Diane C. Tillotson* for the plaintiff.

*James F. O'Brien* for the defendants.

PERRETTA, J. A Land Court judge sitting by designation in the Superior Court concluded that the defendants' application for a special permit and site plan approval had been granted constructively and allowed their motion for summary judgment.[2] The ensuing appeal by the board of aldermen of Newton

---

[1]Joseph L. Barry and Dennis E. Barry, Trustees of HJD Newton Associates Trust, and Stop & Shop Supermarket Company.

[2]The procedural route by which this matter came to be resolved in the Superior Court is as follows. After the defendants filed with the city clerk a notice claiming a constructive grant of their application for a special permit and site plan approval, the board of aldermen of Newton brought an appeal in the Land Court pursuant to G. L. c. 40A, § 17. But see *Board of Appeals of Westwood* v. *Lambergs,* 42 Mass. App. Ct. 411, 413 n.3 (1997), noting that such an action should be brought under G. L. c. 231A. Although the Land Court judge was of the view that he had jurisdiction to entertain an action

(board)[3] brings before us the same question as was before the trial court judge, that is: "[W]hether the timely filing of a document which sets forth the action of the [board], including the votes of each member, but giving reasons extraneous to the result of the vote, indeed, even reasons which would apply to a contrary vote, constitutes final action within the meaning of G. L. c. 40A, § 9." We affirm the judgment.

1. *The statute.* To put the undisputed facts in perspective, we set out the pertinent provisions of G. L. c. 40A, § 9, tenth and eleventh pars., as inserted by St. 1987, c. 498, § 1:

> "Each application for a special permit shall be filed by the petitioner with the city . . . clerk and a copy of said application . . . shall be filed forthwith by the petitioner with the special permit granting authority. The special permit granting authority shall hold a public hearing . . . The decision of the special permit granting authority shall be made within ninety days following the date of such public hearing. The required time limits for a public hearing and said action, may be extended by written agreement . . . .

> "Failure by the special permit granting authority to take final action within said ninety days or extended time, if applicable, shall be deemed to be a grant of the special permit. . . . The special permit granting authority shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and setting forth clearly the reason for its decision and of its official actions . . . ."

2. *The undisputed facts.* On December 11, 1995, pursuant to G. L. c. 40A, § 9, the defendants applied to the board for a special permit and site plan approval to construct a Stop & Shop supermarket. The board, through its land use committee (committee), held a public hearing and several working sessions to consider the application. Ultimately, the committee recom-

---

seeking declaratory relief, he chose to remove that possible issue from the case by following the procedure set out in *Konstantopoulos* v. *Whately,* 384 Mass. 123, 129 (1981). The case was then decided on cross motions for summary judgment.

[3]Newton's special permit granting authority.

mended that the board approve the defendants' request with the conditions which were listed in the committee's draft decision. After a lengthy debate, the board denied the defendants' application.[4]

Although the parties previously had agreed that the time for final action on the application would be extended to September 4, 1996, the board filed its decision with the city clerk on August 13. At the time of the board's vote on the application, it had in its possession a four-page draft order setting out the reasons for a denial of the application. However, the victorious minority withdrew that draft, and the decision filed with the city clerk was an almost verbatim tracking of the committee's recommendation approving the application with one major difference, namely, the vote of the full board noted at the conclusion of the decision. Put another way, the decision contained no reasons for the board's denial other than its final vote. The defendants filed a timely notice of appeal from that decision pursuant to G. L. c. 40A, § 17.

Before any action was taken on that pending appeal, the ninety-day time period for final action by the board under § 9 elapsed. The defendants then filed a notice of approval with the city clerk. That notice prompted the board to bring the present action.

3. *Discussion.* In *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 111-112 (1981), the court made clear that timely "final action" by a board includes the filing of its decision with the city or town clerk within the ninety-day period set out in § 9: "Even though § 9 makes no mention of filing the decision of the permit granting authority with a city clerk, such filing is necessary to limit the period [within] which appeals may be taken. . . . Furthermore, unless the board's decision is filed with the clerk, there would be no commencement of the statutory time within which appeals may be taken." As provided in § 9, the failure to take timely "final action" results in a constructive grant of the permit, the purpose of which is "to induce the board to act promptly." *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 623 (1983).

---

[4]Fourteen members of the board voted to approve the application, nine voted in opposition, and one member was absent. Because § 9, tenth par., provides that the issuance of a special permit requires a "two-thirds vote of boards with more than five members," the board correctly treated its action as a denial of the application.

It is the board's position that the document that it filed with the city clerk on August 13 was sufficient to satisfy the requirement of timely final action and prevent a constructive grant of the permit. It claims that there is nothing in § 9, eleventh par., that prescribes the contents of the decision filed with the city clerk. We held to the contrary in *Shea* v. *Board of Aldermen of Chicopee*, 13 Mass. App. Ct. 1046, 1046-1047 (1982).

Although the *Shea* opinion does not contain a recital of its underlying facts, the record in that case was included among the materials presented to the trial court judge on the motions for summary judgment in the instant matter. Those materials show that the decision filed with the city clerk consisted only of a copy of the landowner's application for a special permit with the following notation made thereon by the board: "10/7/80: Lost by a roll call vote of 1 yes, 11 no."

In affirming the trial judge's annulment of the board's decision, we stated: "The plaintiff's application for a special permit under . . . the zoning ordinance is deemed to have been granted by operation of law under G. L. c. 40A, § 9 . . . because the board of aldermen, acting as the special permit granting authority under the ordinance . . . failed to render or file with the city clerk within ninety days of either of the public hearings on the application . . . a 'decision' of the type contemplated by G. L. c. 40A, §§ 11 . . . and 17." *Ibid.*[5]

A decision to deny an application for a special permit does not require detailed findings. See *Schiffone* v. *Zoning Bd. of Appeals of Walpole*, 28 Mass. App. Ct. 981, 984 (1990). Any permissible reason to deny the application will survive appellate review. "The denial of special permits is within the discretion of the board. *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 638 (1970). *Vazza Properties, Inc.* v. *City Council of Woburn*, 1 Mass. App. Ct. 308, 311-312 (1973). In addition, '[a] judge reviewing a decision of the board denying a permit does not possess the same discretionary power as does the board, and the decision of the board can only be disturbed "if it is based on a legally untenable ground" . . . or is "unreasonable, whimsical, capricious or arbitrary.' " *Subaru of New England,*

---

[5]The board argues that because a trial was held and a view taken in *Shea,* "it was not a true constructive grant case." We fail to see the significance of the purported distinction between the present case and *Shea.* In any event, our reported decision in the latter case (as well as the decision of the trial judge) is expressly based upon the board's failure to satisfy the requirements of § 9.

*Inc.* v. *Board of Appeals of Canton,* 8 Mass. App. Ct. 483, 486 (1979), quoting from *Gulf Oil Corp.* v. *Board of Appeals of Framingham,* 355 Mass. 275, 277-278 (1969)." *ACW Realty Mgmt., Inc.* v. *Planning Bd. of Westfield,* 40 Mass. App. Ct. 242, 246 (1996).

If, as the board argues, the vote alone can constitute a decision within the comprehension of § 9, any appeal becomes an expensive, time consuming, empty gesture requiring a remand to the permit granting authority for a statement of reasons showing that the denial was not based upon a legally untenable ground, all of which could be followed by yet another appeal.[6] Such a practice would effectively create an unlimited appeal period which is "contrary to our appellate practice generally." *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.,* 384 Mass. at 112. See *Elder Care Servs., Inc.* v. *Zoning Bd. of Appeals of Hingham,* 17 Mass. App. Ct. 480, 481-482 (1984). On the other hand, the result reached in *Shea* is consistent with the legislative policy underlying constructive grants, that is, to induce prompt *final* action by the board.[7]

The board also argues that the document it filed satisfied the requirements of § 9 because the reason for the denial could be inferred readily, that is, the victorious minority were not satisfied that the problems discussed in the committee's recommendation had been solved. This argument was correctly

---

[6]Relying upon *Pinecrest, Inc.* v. *Planning Bd. of Billerica,* 350 Mass. 336 (1966), the board argues that the proper remedy in this case is a remand. In *Pinecrest,* however, the court accepted the terse statement "Disapproved — Improper Drainage" as sufficient final action under G. L. c. 41, § 81U, to defeat constructive approval of the plaintiff's plan. A remand was required, however, because no evidence of improper drainage was presented to the planning board. See *Mullin* v. *Planning Bd. of Brewster,* 17 Mass. App. Ct. 139, 144 (1983), pointing out the obvious difference between no final action and timely final action ultimately determined to be erroneous.

[7]The trial court judge was aware of a potential problem inherent in the supermajority requirement of § 9 as it pertained to the filing of a decision setting out the reasons for the denial of an application. Where there is a majority but not a two-thirds majority voting in favor of the application, there could be situations "in which a bare majority of a board might seek by parliamentary maneuvering to cause a constructive grant by failing to record the reasons" for the victorious minority's decision. Section 9 makes no express provision for the filing of a decision by a victorious minority. We need not consider whether such a provision is implicit in the statute because, as noted by the trial court judge, there was no suggestion of such parliamentary maneuvering in this case. Rather, the record establishes that the victorious minority withdrew its proposed draft decision.

disposed of by the trial court judge who stated: "That might be the case but there may have been other reasons as well, and there must be more than speculation as to the reasons for the denial."[8] See *Security Mills Ltd. Partnership* v. *Board of Appeals of Newton*, 413 Mass. 562, 567-568 (1992) (where board's decision revealed that the vote of at least one of four members was based upon a clearly erroneous ground, its decision had to be annulled for failure to be based upon legally tenable ground by requisite supermajority vote).

Because of the board's failure to render or file timely with the city clerk a decision within the comprehension of § 9, the defendants' application for special permit and site plan approval is deemed to have been constructively granted.[9]

*Judgment affirmed.*

---

[8] We think the statement of the trial court judge applies with equal force to the board's claim that the audio tape of its deliberations is a sufficiently detailed record of the proceedings from which the reasons for its denial could be gleaned. We also note from the materials included in the record appendix that the same argument was made, without success, in *Shea* v. *Board of Aldermen of Chicopee*, 13 Mass. App. Ct. 1046 (1982).

[9] In concluding that the board's failure to take final action timely had resulted in a constructive grant of the defendants' application for special permit and site plan approval, the trial court judge discussed the question of whether the grant would go to the application as requested or to the application as approved by a majority but not the requisite supermajority. It may be recalled that a majority of the board voted in favor of the committee's recommendation, approving the application *with conditions*. When the defendants represented in the trial court that they would accept the grant with the conditions as specified in the committee's recommendation, it became unnecessary for the trial court judge to determine the scope of the grant. The defendants took no appeal from the judgment, which imposed all the conditions set out in the committee's recommendation, and neither they nor the board make any argument on appeal concerning the scope of the constructive grant.