BOARD OF ALDERMEN OF NEWTON *vs.* HENRY MANIACE
& others.[1]

Suffolk. April 8, 1999. - June 18, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Zoning,* Special permit, Site plan approval, Constructive grant of relief.
*Municipal Corporations,* Board of aldermen. *Words,* "Final action."

A special permit granting authority took "final action" within the meaning of
G. L. c. 40A, § 9, by recording with the city clerk the result of its vote on
an application for a special permit, and was not compelled by that section
to file at the same time the reasons for its decision in order to avoid a
constructive approval of the application. [728-733] IRELAND, J., dissenting,
with whom LYNCH & FRIED, JJ., joined.

CIVIL ACTION commenced in the Land Court Department on
October 7, 1996.

After transfer to the Superior Court Department, the case was
heard by *Peter W. Kilborn,* J., sitting under statutory authority,
on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Diane C. Tillotson* for the plaintiff.

*James F. O'Brien* for the defendants.

The following submitted briefs for amici curiae:

*Richard A. Nylen, Jr.,* for Massachusetts Chapter, National
Association of Industrial and Office Properties.

*Leonard M. Davidson* for Citizens Organized for Responsible
Development.

*William H. Solomon* for City Solicitors and Town Counsel
Association & another.

GREANEY, J. The board of aldermen of Newton (board)[2] denied
the defendants' application for a special permit and site plan ap-
proval to construct a supermarket on Needham Street in New-

---

[1] Joseph L. Barry and Dennis E. Barry, trustees of the HJD Newton Associ-
ates Trust, and Stop & Shop Supermarket Company.

[2] Newton's special permit granting authority.

ton. The defendants timely filed with the city clerk a notice claiming a constructive grant of their application and site plan approval.[3] The board appealed, pursuant to G. L. c. 40A, § 17, from the notice of constructive grant. A judge in the Land Court, sitting by designation in the Superior Court, relied on *Shea* v. *Aldermen of Chicopee*, 13 Mass. App. Ct. 1046 (1982), to conclude that the defendants' application had been constructively granted, and allowed their motion for summary judgment. The board appealed to the Appeals Court, and the Appeals Court affirmed the judgment. *Aldermen of Newton* v. *Maniace*, 45 Mass. App. Ct. 829 (1998).[4] We granted the board's application for further appellate review and now reverse the judgment entered in the Superior Court.

1. The essential facts include the following. On December 11, 1995, the defendants filed with the city clerk an application for a special permit and site plan approval to construct the supermarket. The board held a public hearing on February 13, 1996, and, through its land use committee, held a number of working sessions to consider the application. The parties agreed to extend the time within which the board was required to take final action on the application through September 4, 1996.

The defendants' application was placed on the agenda for the board's July 8, 1996, meeting. The documents in the possession of the board at that time included a memorandum prepared by the city's planning department recommending denial of the application; a draft denial order prepared by two board members and describing the defendants' proposal and reasons for denial; and a draft approval order prepared by the board's land use committee and describing the defendants' proposal and reasons for its approval. After the chair of the land use committee presented the committee's report recommending approval of the application, a motion was made by one of the authors of the draft denial order to substitute that order for the draft approval order. A vote on the motion was postponed to the August 12, 1996, board meeting.

At the August 12, 1996, board meeting, the proponent of the motion to substitute the draft denial order withdrew the motion.

---

[3]Prior to filing a notice of constructive grant, the defendants filed with the Land Court a notice of appeal from the board's decision pursuant to G. L. c. 40A, § 17. That appeal is not at issue here.

[4]For a more detailed procedural history of this case, see *Aldermen of Newton* v. *Maniace*, 45 Mass. App. Ct. 829, 829-830 n.2 (1998).

The defendants' application was extensively debated by the board with various members voicing the reasons for his or her vote. Subsequently, a roll call was taken, resulting in fourteen members of the board voting in favor of the land use committee's recommendation, and nine opposed to the recommendation. Accordingly, the application was deemed denied.[5]

On August 13, the board filed with the city clerk a document virtually identical to the draft approval order, except for the vote of the individual board members noted at the conclusion of the document, along with the notation "FAILED TO CARRY."

On September 30, 1996, the judge remanded the case to the board for findings as to the denial of the special permit and site plan approvals. The board revoted on the application and issued a denial order on October 21, 1996, which was filed with the city clerk on November 1, 1996.

2. General Laws c. 40A, § 9, provides, in relevant part:

> "Each application for a special permit shall be filed by the petitioner with the city . . . clerk and a copy of said application . . . shall be filed forthwith by the petitioner with the special permit granting authority. The special permit granting authority shall hold a public hearing . . . The decision of the special permit granting authority shall be made within ninety days following the date of such public hearing. The required time limits for a public hearing and said action, may be extended by written agreement . . . .

> "Failure by the special permit granting authority to take final action within . . . ninety days or extended time, if applicable, shall be deemed to be a grant of the special permit. . . . The special permit granting authority shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and setting forth clearly the reason for its decision and of its official actions, copies of all of which shall be filed within fourteen days in the office of the city or town clerk and shall be deemed a public record . . . ."

---

[5]General Laws c. 40A requires that boards consisting of five or more members obtain a two-thirds majority in order for an application for a special permit to be approved.

The issue before the judge, and the sole question presented for our consideration, is whether the timely filing of a document which sets forth the action of the board, including the votes of each member, but includes reasons which do not support the result of the vote, and which, in fact, would support a contrary vote, constitutes final action within the meaning of G. L. c. 40A, § 9. The board contends that the document it filed with the city clerk was sufficient to fulfil the final action requirement of § 9, and thereby avoid the imposition of a constructive grant of the defendants' special permit application and site approval plan. The defendants argue that their application was constructively allowed because the board failed to set forth the reasons for its denial. Because we do not construe § 9 as compelling the board to delineate its reasons for denying the defendants' application in order to satisfy the "final action" requirement of § 9, we conclude that a constructive grant should not have resulted.

We have said that the Legislature intended by operation of § 9 "to '[obligate] a board of appeals to [take final action] on an appeal within the statutory time period, otherwise the applicant prevails by default.' " *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 622 (1983), quoting *Rinaudo* v. *Zoning Bd. of Appeals of Plymouth*, 383 Mass. 885, 885 (1981). See *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 110 (1981). The filing of the board's decision in the office of the municipal clerk constitutes "final action" as that term is used in § 9. See *id.* If the board fails timely to file its decision, the application for a special permit is deemed constructively granted. The purpose of the constructive relief provided for in § 9, together with the requirement that the board make its decision within a set period of time, is to induce a special permit granting authority to act promptly. *Capone* v. *Zoning Bd. of Appeals of Fitchburg, supra* at 623. The requirement that the board file its decision with the municipal clerk is intended to give interested parties notice that the appeal period has commenced, and is necessary to limit the period in which appeals may be taken under § 17. *Id.* See *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc., supra* at 112 ("an unlimited appeal period is contrary to our appellate practice").

The defendants contend that "[c]ase law interpreting [§] 9's final action requirement unequivocally confirms that [§] 9 final action mandates the timely filing of a decision which sets forth *both* the vote of the SPGA [special permit granting authority]

and the SPGA's reasons for its vote." They further assert that "[t]he cases hold that an SPGA's failure to satisfy both elements of the final action test results in a constructive grant." The defendants overstate relevant case law.[6] Although none of our cases clearly defines the term "decision" for purposes of § 9, we have never imposed on a special permit granting authority which denies a special permit, but fails to comply with the statutory requirement that it provide reasons for its action, the constructive grant penalty sought by the defendants.

The only case of which we are aware that directly supports the defendants' position is *Shea* v. *Aldermen of Chicopee, supra* at 1046-1047. In *Shea*, a rescript opinion, the Appeals Court determined that the board's filing of a decision which consisted of a copy of the petitioner's application for a special permit, and included the notation "10/7/80: Lost by a role call vote of 1 yes, 11 no," did not constitute "a 'decision' of the type contemplated by G. L. c. 40A, § 11 . . . and 17," and thus a constructive grant of the application resulted.

We have not had occasion to pass on the validity of the *Shea* rule. Contrary to the result in *Shea*, we do not think that the Legislature, in devising a statutory scheme by which applications for special permits must timely be considered, obligated local boards to delineate their reasons for denying a special permit application in order to satisfy the "final action" requirement of § 9. By its terms, § 9 required nothing more of the board than its vote on the defendants' application, and the filing of a document reporting the results of the vote with the city clerk, in order for the board to avoid the heavy penalty of a constructive grant. See *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc., supra* at 111-112 (timely "final action" by a board includes the filing of its decision with the city clerk within the applicable time period). That the statute also imposes on the board a requirement to file in a timely manner with the city clerk "a detailed record of its proceedings, indicating the

[6]Other than *Shea* v. *Aldermen of Chicopee*, 13 Mass. App. Ct. 1046 (1982), the cases relied on by the defendants do not support their contentions. In *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 110 (1981), and *Elder Care Servs., Inc.* v. *Zoning Bd. of Appeals of Hingham*, 17 Mass. App. Ct. 480, 481 (1984), the respective boards failed timely to file anything with the city or town clerk. In *Board of Appeals of Westwood* v. *Lambergs*, 42 Mass. App. Ct. 411, 415 (1997), the board's decision failed to address one of two variances requested in the defendants' application, and thus that part of the application was constructively granted.

vote of each member upon each question, or if absent or failing to vote, indicating such fact, and setting forth clearly the reason for its decision and of its official actions," does not mean that the document filed with the city clerk for purposes of meeting the "final action" requirement must contain that record.[7]

We acknowledge that some of our prior cases tend to speak in terms of the board's filing, as a single document, the action taken on an application for a special permit or variance and the reasons for that action. See *Security Mills Ltd. Partnership* v. *Board of Appeals of Newton*, 413 Mass. 562, 566 (1992) (suggesting that decision and reasons must be filed together); *Capone* v. *Zoning Bd. of Appeals of Fitchburg, supra* at 623 (same); *Lane* v. *Selectmen of Great Barrington*, 352 Mass. 523, 526-527 (1967) (omission of statement of reasons in connection with grant of zoning relief held to invalidate board's decision). Nonetheless, a faithful interpretation of the statute requires us now to conclude that the term "decision" as used in § 9 does not necessitate the filing of a single document meeting all of the requirements imposed by § 9. Accordingly, we conclude that "final action" within the meaning of § 9 occurred when the board recorded with the city clerk the result of its vote on the defendants' application.

The result we reach furthers the legislative policies behind § 9. The disapproval of the board, timely filed with the city clerk, constituted notice to the defendants of the action taken by the board on their application and provided a basis for further action by the defendants. It gave the defendants the right to appeal from the board's decision (as they did), and prevented the constructive approval of the application through inaction of the board. See *Pinecrest, Inc.* v. *Planning Bd. of Billerica*, 350 Mass. 336, 339 (1966). Even though the reasons for the board's action were not clear from the document it filed with the city clerk, those reasons were not critical to achieving these legislative goals.

While nothing in the statute compelled the record of the board's proceedings on the defendants' application to be filed contemporaneously with the vote, the board was obligated by § 9 to make and file such record within fourteen days of the

---

[7]In fact, the statute itself implies that separate documents may be filed where it states "copies of all of which shall be filed within fourteen days in the office of the city or town clerk and shall be deemed a public record." G. L. c. 40A, § 9.

board's vote, including the reasons for its action. "It is a strong protection against hasty, careless, or inconsiderate action to require a public board to put in writing a full statement of its reasons for action." *Bradley* v. *Board of Zoning Adjustment of Boston*, 255 Mass. 160, 173 (1926).[8]

We recognize that where a board denies a special permit, it is likely "a matter of considerable difficulty, especially for laymen, to state in detail all possible factors the nonexistence of which resulted in the denial of the application." *Cefalo* v. *Board of Appeal of Boston*, 332 Mass. 178, 181 (1955). Thus, where a board denies a special permit, the requirement that the board provide reasons supporting its decision, is less demanding than if the board had acted affirmatively. See *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 515 (1976); *Brockton Pub. Mkt.* v. *Board of Appeals of Sharon*, 357 Mass. 783 (1970); *Schiffone* v. *Zoning Bd. of Appeals of Walpole*, 28 Mass. App. Ct. 981, 984 (1990); *Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 220 (1982). See also M. Bobrowski, Massachusetts Land Use and Planning Law § 10.7.3 (1993 & Supp. 1998). Moreover, where reasons are lacking, a relatively common occurrence, the reviewing court usually takes a tolerant view of this statutory requirement. See, e.g., *ACW Realty Mgt., Inc.* v. *Planning Bd. of Westfield*, 40 Mass. App. Ct. 242, 244 n.3 (1996) ("remands for further factfinding and statements or reasons are in no way unusual in [special permit] cases; on the contrary, remand orders· are often made because they can help to preserve the proper balance between the roles of local boards and the courts").

Whether one views the document filed by the board as providing reasons antithetical to its action, or no reasons for its action, our conclusion is the same. While "[t]he procedure of the . . . board [may have been] slipshod . . . the board did not blunder its way into a position where the [defendants' application] became constructively approved." *Pinecrest, Inc.* v. *Planning Bd. of Billerica, supra* at 339. As the judge did here, a court's exercise of its remand authority is the proper, and most expeditious, remedy where any defects exist in the statement of reasons

---

[8]We reject the board's suggestion that the audiotape of the proceedings it filed with the city clerk satisfied the statutory requirement that it provide reasons for its decision.

filed by a board to support its decision on a special permit application.[9]

3. The judgment is vacated and the case is remanded to the Superior Court for entry of a judgment concluding that the board timely filed its decision on the defendants' application for a special permit and site plan approval with the city clerk, and that constructive approval of the defendants' application did not occur.

*So ordered.*

IRELAND, J. (dissenting, with whom Lynch and Fried, JJ., join). I agree with both courts below, which concluded that the decision filed here did not constitute a final action. I would uphold a constructive grant for the applicants because a decision, although timely filed, is not a "final action" for the purposes of G. L. c. 40A, § 9, unless the special permit granting authority (SPGA) provides supporting reasons.

The clear statutory language directs a SPGA to provide reasons for its decision. "The [SPGA] shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question . . . and setting forth clearly the reason for its decision and of its official actions . . . ." G. L. c. 40A, § 9. Newton's SPGA failed to comply with § 9 by submitting a decision containing reasons that completely contradicted its decision.

Our recent interpretation of G. L. c. 40A, § 9, also compels me to conclude that the statute requires reasons to be filed with the SPGA's decision and provides for a constructive grant if they are not. As the court concedes, our precedent has supported the position that reasons should be filed along with the board's decision. See *ante* at 731, citing *Security Mills Ltd. Partnership* v. *Board of Appeals of Newton*, 413 Mass. 562 (1992); *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617 (1983); *Lane* v. *Selectmen of Great Barrington*, 352 Mass. 523 (1967).

In *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*,

---

[9]The defendants, who filed a timely appeal to the Land Court, do not suggest that they were harmed in any respect by the board's failure to provide the proper reasons for its decision within the agreed-to time period.

384 Mass. 109, 112 (1981), we concluded that the decision filed with the town clerk constitutes a "final action." Unlike the court, I read the *Attleboro* case to require that reasons also must be filed within ninety days from the public hearing. There, we noted that final action means "the last or ultimate act of the planning board in relation to the application for a special permit." *Id.* at 111. Given that the statute requires the SPGA to state the reasons for its conclusion, a decision filed without reasons cannot be said to be the last act of the board, and, therefore, it cannot constitute a final action. Because a special permit is constructively granted if the SPGA does not file a final action within ninety days of the public hearing, see G. L. c. 40A, § 9, failure to provide reasons with a decision within that time period results in a constructive grant.

This conclusion is consistent with the policies behind the special permit process. The final action requirement is aimed at two concerns: ensuring that SPGAs act promptly and allowing applicants to appeal SPGA decisions. See *Capone* v. *Zoning Bd. of Appeals of Fitchburg, supra* at 623 (purpose of zoning provision identical to § 9 is to "induce the board to act promptly"); *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc., supra* at 112 (discussing appealability). As to the first concern, allowing a SPGA to submit a final action without requiring reasons to be attached undermines the Legislature's preference for timely decisions, which is embodied in § 9, and it invites abuse by permitting an SPGA to avoid revealing its rationale until it is forced to do so.

As to the second concern, an applicant relies on the decision to form the basis for an appeal. The statute's constructive grant provision is designed for cases like the present one, where the SPGA filed a decision on time, but the decision as filed did not enlighten the applicant, or the public, or a reviewing court as to why the board reached its conclusion. As the Appeals Court noted, "any appeal [from a decision without reasons attached] becomes an expensive, time consuming, empty gesture requiring a remand to the permit granting authority for a statement of reasons showing that the denial was not based upon a legally untenable ground, all of which could be followed by yet another appeal." *Aldermen of Newton* v. *Maniace,* 45 Mass. App. Ct. 829, 833 (1998). The applicant might have to choose between waiting to discover reasons filed subsequent to the decision, if they are submitted at all, or suing to force the SPGA to supply reasons.

The cure proposed by the court is no cure at all and, in fact, invites abuse. The court states that the proper procedure for an applicant to follow is to request a remand to the SPGA so that the SPGA may file the statutorily required statement of reasons. No time limitation applies, and so the result is that the applicant may have to wait a further many months before having the statement of reasons the Legislature wanted the applicant to have. Together with the time consumed in bringing the case to court and obtaining the remand order in the first place, the time elapsed may be very long indeed. The court is undisturbed by this outcome, and does not seem to notice it. It is an outcome plainly at odds with the Legislature's purpose in enacting G. L. c. 40A, § 9, and the court offers no reasons of policy for allowing applicants to be mistreated in this way.

Section 9 was designed to prevent the conduct exhibited by the SPGA in this case, and, therefore, I would uphold the decisions of the Superior Court granting the special permit to the applicants.