THERESA L. DEVINE, trustee,[1] *vs.* BOARD OF HEALTH OF
WESTPORT & another.[2]

No. 05-P-428.

Bristol. January 9, 2006. - April 14, 2006.

Present: RAPOZA, GREEN, & KATZMANN, JJ.

*Municipal Corporations,* Board of health. *Sewage Disposal. Permit. Statute,*
Construction.

In a civil action to require the defendants, a town's board of health and its
agent (board), to issue a septic system permit to the plaintiff, the judge
properly granted summary judgment in favor of the plaintiff, where the
plain language of G. L. c. 111, § 31E, required that, within forty-five days
of an application for a permit, the board either issue the permit or issue a
written statement of its reasons for denying the permit, and where § 31E
provided for the constructive grant of the permit when the board failed to
do either of these within the forty-five day time limit. [130-134]

CIVIL ACTION commenced in the Superior Court Department on
May 10, 2004.

The case was heard by *Richard J. Chin,* J., on motions for
summary judgment.

*Jason R. Talerman* for the defendants.

*J. Owen Todd* for the plaintiff.

KATZMANN, J. The defendants, Board of Health of Westport
and its agent (collectively board), appeal the allowance of sum-
mary judgment by a Superior Court judge, requiring the board
to issue a septic system permit to the plaintiff, Theresa L. De-
vine as trustee of the Atlantic Ave. Realty Trust (trust), based on
a constructive grant. Holding that the board had violated G. L.
c. 111, § 31E, the judge interpreted that statute to require that a
board of health not only vote on a permit application within the

---

[1] Of Atlantic Ave. Realty Trust.

[2] The agent for the Board of Health of Westport.

prescribed time period, but if the vote is a disapproval, also record the vote in a written decision, with a statement of reasons, within the same time period. According to the judge, failure to issue such a written decision within the prescribed time period triggers the constructive approval of the permit. We agree with this reading of the statute, and affirm the judgment.

*Background.* The dispute in this case arises from a proposed septic system upgrade for a residential property in Westport. When the two-bedroom house located on the property was enlarged to four bedrooms, the existing septic system went out of compliance with the requirements of 310 Code Mass. Regs. §§ 15.00 (1995) (more commonly known as Title V). Seeking to obtain Title V certification, the plaintiff submitted to the board a septic system upgrade plan, dated August 31, 2002, and application for a subsurface sewage disposal system construction permit. After the board denied the application on November 19, 2002,[3] the plaintiff submitted a revised plan, dated January 14, 2003, and application to the board on or about January 20, 2003.

The board held public hearings on the revised application on May 19, June 16, and June 20, 2003. On June 20, 2003, the board voted to deny the application. As stated at the hearing, the application was denied "[b]ased on the risk of flood damage to the environment and also disruption of the system . . . [r]elating both to barrier beach and flood plain." After the board's unanimous vote to deny, its chairman stated that the board would "issue a written letter of denial to the applicant . . . [and] recommend[ed] that [the board] probably issue it as soon as possible . . . within ten days." The letter was never sent.[4]

Having received no written decision from the board after nine months, the plaintiff sent a written demand to the board on

---

[3]The plaintiff appealed the denial of the original application, and a Superior Court judge vacated the board's denial finding it was based on "incorrect application of a non-existing By-law," and remanded the matter to the board. It appears that action on the original application and plan by the board has been stayed pending the outcome of this appeal.

[4]It is undisputed that the plaintiff had actual notice of the board's decision in that the plaintiff's husband and the attorney and engineer for the trust attended the hearing.

March 25, 2004, for issuance of the permit, which the plaintiff claimed had been constructively granted pursuant to G. L. c. 111, § 32E. The board did not respond. On May 10, 2004, the plaintiff filed a complaint seeking mandamus relief (count I) and a declaratory judgment (count II), resulting ultimately in summary judgment in favor of the plaintiff and a determination of a constructive grant, which are the subject of this appeal.[5]

*Discussion.* This case turns on G. L. c. 111, § 31E, inserted by St. 1983, c. 536, which establishes procedures under which local boards of health must operate when deciding whether to issue permits for the construction, maintenance, or alteration of residential sewage disposal systems. Section 31E provides in relevant part that:

> "Any health officer or board of health . . . *shall act upon a completed application for such permit to construct, maintain, or alter such system within forty-five days* from the date upon which such completed application is filed with said health officer or board of health. If a *determination on a completed application is not rendered within forty-five days* by the appropriate health officer or board of health, *then said permit shall be deemed to have been granted.*" (Emphasis added.)

G. L. c. 111, § 31E, first par. Section 31E defines "action on a completed application" as meaning either "approval of said application and issuance of the permit" or "disapproval of said application with a written statement of the reasons for such disapproval . . . sent to the applicant by first class mail."[6] G. L. c. 111, § 31E, third par.

---

[5]On May 14, 2004, the board issued a letter to the plaintiff, stating that on May 10, 2004, it had voted to affirm its June 20, 2003, denial. In the letter, the board rested on the same bases for denial as were articulated at the June 20, 2003, hearing.

[6]The full definition states:

> "For the purpose of this section, 'action on a completed application' shall mean approval of said application and issuance of the permit to construct, maintain, or alter, or disapproval of said application with a written statement of the reasons for such disapproval. The written statement of reasons, in the case of disapproval shall be sent to the applicant by first class mail, postage prepaid and shall include the information necessary in order to ascertain why the application or the proposed

Interpretation of a statute is a question of law, which we review de novo. *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997). We interpret a statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated . . . [and] the statutory language itself is the principal source of insight into the legislative purpose." *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000), quoting from *Registrar of Motor Vehicles* v. *Board of Appeals on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). See *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 622-623 (1983). We attempt to construe the language such that all provisions will be given effect and no part rendered inoperative or superfluous. *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998).

Applying these principles and focusing on the language of § 31E, we note that § 31E plainly requires the board to act on a completed application within forty-five days and defines precisely what "action on a completed application" the board is to take — namely, "approval of said application and issuance of the permit . . . or disapproval . . . *with a written statement of the reasons for such disapproval* . . . sent to the applicant by first class mail" (emphasis added). G. L. c. 111, § 31E, third par. The Legislature defined, using the word "action," what is meant by the mandate in the first paragraph that "the board of health . . . *shall act* . . . within forty-five days" (emphasis added). G. L. c. 111, § 31E, first par. The board cannot satisfy its duty to "act on a completed application" without issuing a permit or a written decision of its disapproval.

"Where the statute is not ambiguous or couched in terms suggesting that we must look beyond its express language, we construe the statute in accordance with its plain meaning."

subsurface sewage disposal system or both fail to comply with local or state code requirements."

G. L. c. 111, § 31E, third par.

*Marco* v. *Green,* 415 Mass. 732, 739 (1993). Here, the plain meaning in § 31E of using the same deadline of "forty-five days" for both the mandate to act and the constructive grant provisions is that these provisions refer to the same time period and the same thing. In short, § 31E spells out exactly what is required of the board and prescribes the consequences of a failure to adhere to its timeline.

The plaintiff correctly reads § 31E as providing for the constructive grant of a permit when a board fails to act on a completed application, by issuing either a permit or a written statement of the reasons for disapproval, within forty-five days. Under this interpretation, the board constructively approved the plaintiff's application when it failed to mail a written statement to the plaintiff within the time limit, even though the board had voted to disapprove the application within forty-five days of its filing. In claiming that it was not obligated to file a written statement of reasons for denial of the permit within forty-five days to stave off a constructive grant, the board counters that the Legislature used a different word — "determination" — to excuse it from doing what the Legislature plainly required in the previous sentence ("shall act") and defined in the third paragraph ("action . . . shall mean"). The board contends that the word "determination" in § 31E refers only to the board's vote on an application and not to any written document. This argument ignores the fact that while the statute defines "action on a completed application," it did not find it necessary to define "determination." This is because a "determination" on an application can be *either* the written permit or the "disapproval . . . with a written statement of the reasons." G. L. c. 111, § 31E, third par. This construction is not only logical but also gives meaning to every provision of § 31E.

In seeking to counter the fact that § 31E imposes the identical deadline of forty-five days for both the requirement to "act" and to issue a "determination," the board contends that the requirement of a written determination within forty-five days is directory, and that noncompliance does not trigger consequences. However, it is illogical to suggest that the Legislature saw fit to provide precise definition of the term it intended to have merely directory force, while intending the undefined term "determina-

tion" (from which the consequence of constructive grant might flow) to have an independent meaning. The cases upon which the board relies, moreover, arise in different circumstances. Cf. *Zuckerman* v. *Zoning Bd. of Appeals of Greenfield*, 394 Mass. 663, 665-666 (1985) (statute provided a deadline of seventy-five days from day appeal filed for zoning board of appeals to act on application, without specifying when the fourteen days for the filing of a written record begins to run); *Burnham* v. *Hadley*, 58 Mass. App. Ct. 479, 483 (2003) (statute provided a "two-step process" requiring zoning board to act on an application within one hundred days, and then to file its decision within fourteen days following the period in which it must act); *Cardwell* v. *Board of Appeals of Woburn*, 61 Mass. App. Ct. 118, 121 (2004) (statute did not explicitly require a written decision, therefore such requirement was directory, not mandatory). Here, by contrast, § 31E explicitly requires a written statement of reasons for denial; it does not provide a two-step process with two different time frames for decision-making and issuing written statements. Rather, the statute simply requires that within forty-five days of the filing of the application, the board issue a permit or a written denial with reasons, or the permit is constructively granted.

To be sure, the "heavy penalty of a constructive grant" is subjected to close scrutiny. *Id.* at 123, quoting from *Aldermen of Newton* v. *Maniace*, 429 Mass. 726, 730 (1999). Here, like other constructive grant provisions, see *id.* at 729, the constructive grant provision in § 31E induces the board to act promptly and prevents "the prospect of a perpetual cloud [on] the rights of a landowner to use his land." *Zuckerman* v. *Zoning Bd. of Appeals of Greenfield*, 394 Mass. at 667. See *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. at 623. To promote the processing of appeals, § 31E provides in the case of a denial that the required "written statement of the reasons for such disapproval . . . shall include the information necessary in order to ascertain why the application or the proposed subsurface sewage disposal system or both fail to comply with local or state code requirements." G. L. c. 111, § 31E, third par. The interpretation urged by the board — which would leave open-ended the time in which a board would be obligated to is-

sue a written statement of reasons in the case of the denial of an application — would create the type of uncertainty that is "contrary to our appellate practice." *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.* 384 Mass. 109, 112 (1981). The board's interpretation fails to recognize that § 31E is designed to bring closure to the application and planning process. Section 31E protects applicants from arbitrary inaction and expressly provides a nondiscretionary remedy of a constructive grant where the board has failed to act by either issuing a permit or a written statement of reasons for denial within forty-five days.

Although § 31E governs permit applications reviewed by a board of health, like the Zoning Act and subdivision control law, it shares "a similar purpose: to regulate the use of land to ensure the safety, convenience, and welfare of the inhabitants of municipalities." *McElderry* v. *Planning Bd. of Nantucket*, 431 Mass. 722, 726 (2000). That purpose is advanced by "an orderly procedure for definitive action within stated times . . . so that all concerned may rely upon recorded action or the absence thereof within such times." *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964). The interpretation the plain meaning of § 31E requires, that within forty-five days of application a board of health must issue a permit or a written statement of reasons for denial to avoid the constructive grant of a permit, is consistent with a logical, bright-line rule "which will cause the least confusion to attorneys and others concerned with the law relating to land use." *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. at 113. See *Craig* v. *Planning Bd. of Haverhill*, 64 Mass. App. Ct. 677, 680 (2005) ("planning board's failure to take action within the appropriate time resulted in the constructive approval of . . . [the] subdivision plan" pursuant to G. L. c. 41, § 81U, fifth par.).

*Judgment affirmed.*