NEXUM DEVELOPMENT CORP. *VS.* PLANNING BOARD OF FRAMINGHAM.

No. 09-P-2291.

Middlesex. December 14, 2010. - March 18, 2011.

Present: MILLS, GRAINGER, & FECTEAU, JJ.

*Subdivision Control,* Decision of planning board. *Zoning,* Cluster development, Special permit, By-law.

This court concluded that the failure of a town planning board (board) to state its reasons for the disapproval of a definitive subdivision plan and the denial of a special permit application, although error, did not require remand to the board, where the board was legally obliged by the town's zoning by-law and applicable regulations to deny the plan and application, such that no issues remained for further, practical consideration by the board. [119-120]

A Superior Court judge properly affirmed the denial by a town planning board (board) of an application for a special permit for a cluster development under the open space residential development provisions of the town's zoning by-law, and for approval of the resulting definitive subdivision plan, where the applicant did not comply with the requirement under the by-law that a soils test be conducted on each lot shown on the preliminary subdivision density yield plan (to determine whether each lot was buildable), and therefore did not properly establish the project's permissible density [120-121]; where the town board of health conditioned its approval of the project's proposed on-site water supply on future satisfaction of water supply issues such that its approval was tied to several conditions subsequent that were beyond the applicant's control and that could be impossible to satisfy [121-122]; and where the proposed water supply was inadequate [122-123].

CIVIL ACTION commenced in the Superior Court Department on April 16, 2004.

The case was heard by *Thomas R. Murtagh,* J.

*Ira H. Zaleznik* for the plaintiff.

*Eric F. Eisenberg* for the defendant.

MILLS, J. Nexum Development Corp. (Nexum) proposes to develop a thirty-two acre tract of land (property) as a residential

cluster development[1] in Framingham. The planning board of Framingham (board) denied Nexum's applications for a special permit and the resulting cluster subdivision plan necessary to construct the project. Nexum appealed these two adverse decisions to the Superior Court pursuant to G. L. c. 40A, § 17, and G. L. c. 41, § 81BB. Following a bench trial, the judge denied the appeals. We affirm.

1. *Background.* The property fronts Nixon Road, a public way, and is largely wooded, with a small area of wetlands. The property features a large, 150-foot high hill and has no connection to any municipal water supply or sewer system. Nexum proposed to build twenty-four detached single-family residences in a condominium development on the property, reserving the remainder of the property for open space managed by a local conservation organization. Nexum planned to construct a common well and a common septic system for use by the condominium residences.

Nexum sought, in two separate but necessarily parallel applications, (1) a special permit for cluster development pursuant to Framingham's open space residential development (OSRD) provisions in its zoning by-law, and (2) approval of the resulting definitive subdivision plan. Nexum proceeded through the permitting process from December, 2001, until the board's ultimate votes on March 25, 2004. The board denied the applications.[2]

Nexum appealed from the denial of the special permit pursuant to G. L. c. 40A, § 17. Nexum also appealed from the board's decision denying approval of the definitive subdivision plan

---

[1] A "cluster development" is "a residential development in which the buildings and accessory uses are clustered together into one or more groups separated from adjacent property and other groups within the development by intervening open land. A cluster development shall be permitted only on a plot of land of such minimum size as a zoning ordinance or by-law may specify which is divided into building lots with dimensional control, density and use restrictions of such building lots varying from those otherwise permitted by the ordinance or by-law and open land. Such open land when added to the building lots shall be at least equal in area to the land area required by the ordinance or by-law for the total number of units or buildings contemplated in the development." G. L. c. 40A, § 9, inserted by St. 1975, c. 808, § 3.

[2] A planning board is charged with administering the subdivision control law, G. L. c. 41, §§ 81K-81GG. By local choice, the board in this case is also the granting authority for the special permit. See G. L. c. 40A, §§ 1A, 9.

pursuant to G. L. c. 41, § 81BB. The consolidated matters proceeded to trial in March, 2009. The judge issued a thoughtful memorandum of decision, denying Nexum's appeals, on June 30, 2009. He concluded that the by-law and applicable regulations required the denial of the applications because (1) Nexum failed to comply with by-law requirements to establish the permissible density of the project,[3] and (2) Nexum could not comply with conditions imposed by the Framingham board of health related to on-site water supply.

Nexum appeals, arguing (1) the board made no statement of its reasons for the decisions, denying Nexum meaningful judicial review, (2) Nexum's density calculation was valid without soils tests on each lot shown on the preliminary subdivision density yield plan, and (3) the judge erroneously upheld the board's denials on the basis of inadequate water supply.

2. *Statement of reasons.* By statute, G. L. c. 41, § 81U,[4] and G. L. c. 40A, § 15,[5] the board was required to identify reasons for its decisions. The board did not meet this requirement. The documents recording the board's decisions contain no statement of reasons, and the board issued no supplemental document stating the reasons for the decisions. This was error. See, e.g., *Wendy's Old Fashioned Hamburgers of N.Y., Inc.* v. *Board of Appeal of Billerica,* 454 Mass. 374, 385-387 (2009) (*Wendy's*); *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston,* 45 Mass. App. Ct. 738, 741-742 (1998).

Nexum argues that this error requires a remand to the board.

---

[3]The by-law, in § IV(M)(4)(c)(1), requires that the number of dwelling units in a cluster development not exceed the number of lots which the by-law, and "all applicable land use regulations in the district (including wetlands protection), and . . . the [town's subdivision regulations]," would permit in a conventional subdivision. The by-law also requires that for parcels unserved by public sewer, an applicant "must certify that each lot identified on the plan is buildable, as evidenced by a soils test, consistent with Title 5 [of the State environmental code, 310 Code Mass. Regs. §§ 15.000 et seq.]."

[4]"In the event of disapproval, the planning board shall state in detail wherein the plan does not conform to the rules and regulations of the planning board or to the recommendations of the health board . . . ." G. L. c. 41, § 81U, as amended by St. 1960, c. 153.

[5]"The [special permit granting authority] shall cause to be made a detailed record of its proceedings, . . . and setting forth clearly the reason for its decision and of its official actions." G. L. c. 40A, § 15, as appearing in St. 1987, c. 498, § 3.

Lack of a statement of reasons typically does. See *Aldermen of Newton* v. *Maniace*, 429 Mass. 726, 732-733 (1999). However, remand is not appropriate where the board cannot permissibly change the result on remand. See *Wendy's*, 454 Mass. at 382-383 & n.23, and cases cited.

Here, a remand would be futile and wasteful. No legally permissible action by the board could change its decisions.[6] We agree with the judge, as discussed *infra*, that the board had a legal obligation, imposed by the by-law and applicable regulations, to deny the applications. Accordingly, no issues remain for further, practical consideration by the board. Despite the error, remand is inappropriate.

3. *Density.* The judge concluded that the language of the by-law, § IV(M)(4)(c)(1) (see note 3, *supra*), is clear and unambiguous as matter of law and requires an applicant (where the project is not served by public sewer) to "certify that each lot identified on the plan is buildable, as evidenced by a soils test, consistent with Title 5 [of the State environmental code, 310 Code Mass. Regs. §§ 15.000 et seq.]." He determined that this language required Nexum to conduct a Title 5 soils test on each lot identified in its preliminary subdivision density yield plan. Because Nexum had not done so,[7] he concluded, the by-law constrained the board to deny the applications. We agree.

The by-law section at issue clearly imposes a cap on the number of dwelling units which a developer can permissibly build in an OSRD cluster development: the number of "buildable" lots which the land could support if developed under a conventional subdivision plan. The by-law specifies that a soils test on each lot on the preliminary subdivision density yield plan will determine whether the lot is "buildable." Because the by-law therefore requires a soils test on each lot shown on the

---

[6]Moreover, we are convinced that further dialogue between Nexum and the board would accomplish nothing, much less result in an opportunity for Nexum to "cure" any defects in its application. Contrast *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 445-446 (1981). We take note that the parties have vigorously litigated this matter in Superior Court and in this court for almost six years.

[7]It is undisputed that Nexum did not conduct soils tests on each lot shown on the preliminary subdivision density yield plan. The judge noted that, if tested, many lots would probably fail to meet Title 5 requirements. We need not consider this likelihood.

preliminary subdivision density yield plan,[8] and because Nexum did not comply with this requirement, Nexum did not properly establish the project's permissible density, and the board properly denied the applications.

The language of the by-law does not permit Nexum's interpretation that a single soils test for a common septic system serving the development would comply with the by-law. Nexum, in effect, argues that the relevant "plan" referred to in this section of the by-law is the cluster plan, not the preliminary subdivision density yield plan. Because this section of the by-law is entitled "Density Yield Plan" and only discusses the requirements for submission of the preliminary subdivision density yield plan, Nexum's interpretation does not persuade us.

Nexum further argues that the tentative approval by the board of the preliminary subdivision density yield plan should have been conclusive on the issue of compliance with the density yield plan section of the by-law. We disagree. The board's September, 2002, "determination," in which it "accept[ed]" Nexum's proposed density of twenty-four units, was made as part of a pre-application conference procedure described under § IV(M)(5) of the by-law as "optional and . . . advisory only." The board expressly conditioned this "accept[ance]" as "[b]ased on the pre-application plans and materials" and "subject to the [b]oard's normal discretion as provided for in the OSRD [b]y-[l]aw and [s]pecial [p]ermit process." Because this "accept-[ance]" resulted from an "optional" and "advisory" process in which the board preserved its discretion to deny the applications for nonconformity with the by-law, the "accept[ance]" did not bind the board, and subsequent denial of the applications was proper.

4. *Water supply.* Nexum argues that the judge erroneously determined that the conditional nature of the Framingham board

---

[8]Nexum argues that this interpretation conflicts with the purpose of the OSRD provisions to preserve open space. We are not persuaded. The town of Framingham made clear choices in the by-law to determine the number of permissible OSRD cluster dwelling units based on the property's total "buildable" lots and to determine whether a lot was "buildable" based on a Title 5 soils test. To the extent that Nexum argues that these requirements are unwise because the soils test may involve physical disruption to the land, its arguments are best addressed to the town.

of health (BOH) approval of the project's proposed on-site water supply could not form a basis for denying the applications. We disagree.

"A planning board may not approve a subdivision plan which does not comply with the recommendation of the board of health; the planning board's options in such a case are limited to those of disapproving the plan or modifying it in such fashion as to bring it into conformity with the recommendation of the board of health." *Loring Hills Developers Trust* v. *Planning Bd. of Salem*, 374 Mass. 343, 348 (1978), quoting from *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 173-174 (1977). Where the planning board cannot modify the plan to conform to board of health conditions, it must disapprove. See *K. Hovnanian at Taunton, Inc.* v. *Planning Bd. of Taunton*, 32 Mass. App. Ct. 480, 486 (1992).

Here, the BOH conditioned approval of the special permit on future satisfaction of water supply issues. The record establishes, and the judge correctly found, that Nexum could not achieve compliance with the conditions. The BOH conditioned its approval of the project on a showing that the water supply could suffice during peak summer usage and that the water supply would not have a *significant effect on the wells* of abutting owners. Thus, as the judge correctly put it, the BOH approval was tied to "several conditions subsequent that were beyond Nexum's control and could be impossible to satisfy." It follows that no amendment to the applications could, as a practical matter, satisfy the BOH conditions and that the board had no choice but to deny the applications.

In addition, the board was required to find that a proposed development has made adequate provisions for water supply in order to approve both a special permit (by-law §§ IV[M][5][d][2][d], V[E][3][a]) and a definitive subdivision plan (§ VII[E][1] of the town's subdivision rules and regulations). The record discloses various studies by the parties, dialogue among them, and theories as to various tests and standards for determining adequacy of water for the project. The judge, on this competent record evidence,[9] concluded that the proposed water

---

[9]Nexum's arguments that the judge made clearly erroneous factual findings

supply was inadequate. The board therefore had a legal obligation to deny the applications on the additional ground that the project had inadequate water supply provisions.

*Judgment affirmed.*

---

are unpersuasive. Giving due deference, as we must, to the judge's findings, we see ample record support and no clear error. See *Wendy's*, 454 Mass. at 383.